TIMOTHY LADD, appellant, *v.* DAMON GRISWOLD *et al.*, appellees.

## *Agreed Case from Scott.*

The general rule, in relation to the administration of the assets of deceased and insolvent partners, is well established. If there is partnership property, and separate property of a partner, the partnership debts are to be paid out of the proceeds of the joint estate; and the individual debts are to be paid out of the proceeds of the separate estate. The joint creditors have no claim on the fund arising from the separate estate, until the individual debts are satisfied; and on the other hand, the separate creditors can only seek payment out of the surplus of the partnership effects, after the satisfaction of the joint liabilities.

Where one partner sells his entire interest in the business to his copartner, the purchaser takes the property, discharged from the lien of his copartner, to have the partnership debts paid therefrom; and the creditors' equity being subordinate to the lien of the partner, the property is wholly freed from the claims of the joint creditor.

It is a doctrine of Equity, that a creditor, who has two funds to which he may resort for payment, shall be required to exhaust the one in which he has an exclusive interest, before he goes upon the fund to which another creditor can only resort.

In bankruptcy, where there is no joint estate, and there is no solvent partner, joint creditors are permitted to prove against the bankrupt's estate *pari passu* with the separate creditor, and this principle applies equally in the case of a deceased or insolvent partner. The joint creditors may participate equally with private creditors, in the estate of the deceased partner.

It is now the settled principle in Equity, that all partnership contracts are to be considered as joint and several; and on this principle, the joint creditors may proceed at Law against the survivor, and in Equity against the estate of the deceased partner.

AGREED CASE from Scott. The controversy originated in the Probate Court of Scott county, in regard to the allowance of a claim against an estate. The claim being allowed by the Probate Court, and a special order being entered, directing that joint and separate debts be paid *pro rata*, an appeal was taken to the Circuit Court of that county. The decision of the Probate Court was there affirmed, and a further appeal was taken to this Court.

The principal facts are stated in the Opinion of the Court.

*D. A. Smith,* for the appellant, filed the following argument:

In this case I only deem it necessary, and propose to bespeak the Court's attentive consideration of the facts agreed, and the following authorities to be found in the Supreme Court Library. In my examination of them, it has been my purpose to quote all that may have a bearing in favor of either view of the case, so that it may be fully illustrated. *McCulloh* v. *Dashiell's* Admr. 1 Harris & Gill, 96; *Wilder* v. *Keeler,* 3 Paige 167; *Egberis* v. *Wood,* ib. 518; *Payne* v. *Matthews,* 6 do. 19; *Allen* v. *Wells,* 22 Pick. 454, 455; Toller on Executors, 455, note 1; 2 Kent's Com. 415-420, and notes; 3 do. 63 to 66, and notes; See Chap. 85, and Acts 21, 22, Appendix to the Revised Statutes. I am persuaded that the statutory provisions referred to, will settle any doubts as to the jurisdiction of the Probate Justice in making such order as we insist should have been made.

In cases involving the deaths, and insolvency of the estate of partners, the whole current of authorities, excepting the Pennsylvania cases, strictly and inflexibly inhibits individual creditors from laying their hands upon partnership effects, (the agreed case assumes that there are "partnership effects, and debts to a large amount unadjusted,") until after the full payment of partnership debts. This is on the principle that partnership effects are a trust fund for the payment of partnership debts. If this is an unyielding principle in favor of partnership creditors, I submit that if they can so exclusively appropriate partnership effects, and come in for an additional *pro rata* with individual creditors, out of individual effects, then the principle of reciprocity and trust as laid down in Kent's Commentaries are overthrown, and the maxim that equality is equity is violated by allowing to partnership creditors more than their fair and equal proportions of the effects of insolvent estates.

R. Swallow's estate *is* insolvent, the doubts and queries of appellees' counsel to the contrary notwithstanding, and no suit can be maintained against it by creditors except at their

Ladd v. Griswold et al.

costs, and "persons entitled shall receive their proportions of said estate" which, according to my construction, are to be ascertained with reference to the laws of the land as applicable to rights of parties respectively. The Court of Probate is a Court of record, having jurisdiction to render judgment and decrees touching the settlement of estates. 'Tis matter of obvious convenience to allow to that Court the most comprehensive jurisdiction in the summary and equitable settlement of estates, on the broadest principles of equity, rather than put parties to the delay and expense of suits in Chancery in the Circuit Courts for the settlement of estates.

The suggestion, that the provision of our statute classifying demands, and putting all demands of the fourth class on the same footing, &c., varies or destroys the principles upon which I rely in this case, cannot be entitled to very grave consideration, when it is apparent to the Court, from the examination of authorities referred to, (2 Kent's Com. 415 to 420, and notes,) that principles exactly analogous to that in our statutes have obtained in Maryland, New York, &c. and especially in the Roman Civil Law, where debts are all put upon equal footing; and yet the equitable principles for which I am contending, have been distinctly, and for ages recognized.

*W. Brown & R. Yates,* for the appellees, filed the following argument:

The appellees having on hand, cash for disbursement in payment of demands of the fourth class, the Probate Court ordered them to pay the same, at the rate of twenty five cents to the dollar, on the whole of said demands of the fourth class, and that in said disbursment, they should put demands on individual and partnership account, on equal and identical footing. To reverse this order, appellant, a separate creditor, prosecutes this appeal.

It is contended, that the Probate Court should have turned partnership creditors upon the partnership property, and that it should not have permitted them to come upon the

separate estate, until after the full payment of the separate debts. If such would be the rule in Equity (independent of our Statute of Wills,) in a proper case, it is respectfully contended, notwithstanding the confidence of the counsel for the appellant, that it has no application to the facts agreed upon. There can be no marshalling of assets in this cause, because there is but one fund, and that a separate one. You cannot marshall a single fund. Story on Partn. § 363.

By the terms of the dissolution, the whole of the property of C. & R. Swallow became the individual property of C. Swallow, wholly free from the claims of the joint creditors.

Justice Story, in his work on Partnership, says: "It may be added, that upon the dissolution, it is competent for the partners, in cases of a voluntary dissolution, to agree, that the joint property of the partnership shall belong to one of them, and if this agreement be, *bona fide,* and for a valuable consideration, it will transfer the whole property to such partner, wholly free from the claims of the joint creditors." § 358.

"While partnership is going on, creditors have no equity, strictly speaking, against the effects of the partnership. Neither have they any lien on the partnership effects for their debts." §§ 358, 97, note 1; 326, note 1. Hence, they may sell and transfer the same to one of the partners, or a third person, free from the claims of creditors of the firm.

"And this is equally true, although the whole or a part of the consideration of the transfer is, that the partner taking the property, shall pay the whole or a particular part of the debts of the partnership; for that will not aid the creditors. The reason is, that, in such a case the retiring partner, who so transfers his share, has no lien on the property, for the discharge of those debts; for, by his voluntary transfer thereof, he has parted with it, and trusted to the personal security, and personal contract of the other partner. Even, if he had, the lien would not pass to those creditors by operation of law, so as to become available in their favor." See section 359, and numerous authorities in note 3.

Subject, however, to these exceptions, it may be generally stated, that when the partners themselves have a lien upon

the partnership effects for the discharge of all the debts and obligations thereof, (as they have in all cases where they have not parted with it,) that lien may, in many cases, be made available for the benefit of the creditors. But then the equities of the creditors are to be worked out through the medium of that of the partners. They have, indeed, no lien, but (as has been said,) they have something approaching to a lien, of which, with the assent of partners entitled to the lien, they may avail themselves in a Court of Equity against the partnership." § 360.

Applying these principles to the facts agreed upon, and it will appear that the effects of C. & R. Swallow, by the act of the partners, had been converted into the individual and separate estate of Chester; that the partners had parted with their lien upon the partnership effects for the discharge of debts due from the firm, and consequently they have no equities through the medium of which joint creditors can work out their equities.

Again, the same author adds: "Still another inquiry may remain in cases where the estate of the deceased partner is not sufficient to pay all his separate debts and all the joint debts, and that is whether the debtors are to be paid *pari passu* out of the assets of the deceased, or either is entitled to a preference. Rule is as in bankruptcy, &c." "But when there is no joint estate, the case may seem to be involved in more nicety and difficulty; since, under such circumstances, the creditors would seem, as their contract is several as well as joint, to be entitled upon general principles to claim *pari passu*, with the separate creditors." §§ 363, 380. Of the like import is the case of *McCulloh* v. *Dashiell*, 1 Harris & Gill, 105. The agreed case shows that the partnership effects, upon dissolution, became the property of Chester Swallow; consequently there was no joint estate, and the Court of Probate adjudged correctly in ordering the joint and separate debts to be paid *pari passu.*

Again, the author says: "Be this doctrine as it may, it seems certain that the joint creditors cannot be compelled, in case of the death of one partner, and the bankruptcy of the survi-

vors, to resort to the estate of the deceased partner for pay-
ment, for the benefit of the fund in bankruptcy in aid of cred-
itors, who are creditors of the survivors and not of the old
partnership." § 364.

In the case at bar, in opposition to what the author says is
certain, the creditors of the surviving partner, and not of the
old partnership, are asking the reversal of the case, for the ex-
press purpose of compelling the joint creditors to resort to
the estate (if any there should be,) of the deceased partner for
payment, in aid of said creditors of said survivors.

Chester Swallow having covenanted to pay the partnership
debts, the joint creditors were entitled to the benefit of said
covenant, and rightfully were paid *pari passu* with other cred-
itors upon the settlement of his estate. *Paine* v. *Matthews,*
6 Paige, 21.

The appellant having elected to take a *pro rata* out of the
estate of Chester Swallow enlarged by all the effects of C.
& R. Swallow, it would be inequitable to permit him to turn
the joint creditors off from the estate of R. until he should
have paid the full amount of his debt. He that seeks equity
must do equity. *Story on Part.* § 384.

Upon the death of Chester Swallow, July 1, 1843, the right
of action in favor of the partnership creditors was against
Ransom alone. "And it is now held that a partnership con-
tract, upon the death of a partner, is in equity to be considered
joint and several, and to be treated as the several debt of
each partner." 3 Kent's Com. 64.

Such being the rights of the partnership creditors as against
Ransom on the 1st of July, 1843, can it be that the demands
of the appellant, which had no existence until July 1844 and
March 1845, can so marshall a single fund as to overreach the
rights of said partnership debtors? There being no partner-
ship effects, the natural and legal remedy of the joint credi-
tors was against said Ransom. They might have sued him and
made their debt out of his separate estate even before said
causes of action originated; and because they indulged said
R. until his death, it is contended that they must be postponed
until the demands of the appellants are paid. So to postpone

Ladd *v.* Griswold *et al.*

them would be inequitable, and so to do would conflict with the opinion of Chief Justice Marshall, in the case of *Tucker* v. *Oxley*, 2 Peters' Cond. R. 183, where he holds the following language: "It is a debt, which, by suit against both the partners, might have been recovered against either of them, and either might have been compelled to pay the whole. Although due from the company, yet it is also due from each member of the company; and the claim of the creditors for its satisfaction extended, previous to the act of bankruptcy, to the whole property of each member of the firm, as well as to the joint property of the firm. It would certainly be impairing that claim to apply, by operation of law, the whole particular fund to other creditors, who at the time of the bankruptcy had not a better legal claim on that fund than the Tuckers, without allowing them to participate in it. The Court, therefore, would be much inclined to consider the creditors of a partnership as having a right, under the general description of creditors of the bankrupt, to prove their debts before the commissioner." We would respectfully ask, if the description of creditors embraced in the fourth class of claims against insolvent estates under our statute, and who are to be paid *pari passu*, is not equally broad, and would not equally with the Bankrupt Act include partnership creditors. The words are, "all other debts and demands of whatsoever kind, without regard to quality or dignity shall constitute the fourth class;" "and when the estate is insufficient to pay the whole of the demands, such demands in any one class shall be paid *pro rata*, whether the same be due by judgment, writing obligatory or otherwise." Statute of Wills, §§ 115, 120. We would beg to know if a partnership debt is no demand, nay, if it is not a legal demand against the estate of a surviving partner. If so, the statute is imperative, and says that it shall be paid *pari passu* with all other debts and demands of the fourth class; and the Probate Court did not err in ordering it so to be done. The remarks made in 6 Paige, 21, in reference to the New York Statute of Wills, are applicable to ours. "The principle adopted by the Revised Statute is, that equality among creditors is equity, in relation to the distri-

bution of the estate of an insolvent decedent, except in cases
where creditors had proceeded to judgment against decedent
before his death.   And the statute is express, that no prefer-
ence shall be given in the payment of one debt over another
debt of this class," to wit, the fourth.

Chief Justice Marshall, in the above cause, at page 185,
remarks:

"Again.   It is undoubtedly unjust that the Tuckers, having
a claim on H. & T. Moore, and being able to obtain pay-
ment from H. Moore, should satisfy that claim entirely out of
the separate estate of T. Moore, to the exclusion of other cred-
itors who had no resort to Henry; and it is probable that a
Court of Chancery might restrain this use of his legal rights
within equitable limits.   But suppose H. Moore also to be a
bankrupt, or to be insolvent and unable to pay the debt, would
it not be equally unjust to apply the estate of each individual
to the discharge of the several debts, to the entire exclusion
of creditors, who previous to the bankruptcy, had a legal and
equitable right to satisfaction out of the separate property of
each."   In the case at bar the joint debtors had such legal
and equitable right against Ransom, and it would be inequi-
table (there being no partnership effects,) to appropriate the
estate of Ransom to the payment of separate debts to their
exclusion.

When the dissolution of the firm of C. & R. Swallow took
place, and by the terms thereof the partnership effects be-
came the separate property of Chester, and he, Chester, did
take them as such separate property, the joint creditors
from that time had no fund to look to, but the separate estate
of the partners respectively; and it strikes me to be against
law, reason and justice, that they should be able, as they
clearly are, according to the authorities extracted above,
(Story on Partn. §§ 358, 359, and authorities in note 3, 360,)
to convert the partnership effects into separate property; and
that, then, the separate creditors, whose debts thereafter ac-
crue, can come in and sweep the separate estates to the ex-
clusion of the partnership creditors, and yet, this must be
done, if the appellant succeeds in his efforts to reverse the

judgment of the Probate Court. This is a stronger case to let in joint creditors upon separate estate, than that stated in *Wilder* v. *Keeler*, 3 Paige, 173.

Independent of the foregoing principles, under the peculiar circumstances of this case, the partnership effects having become separate property, and having in the life time of C. S. been appropriated indiscriminately to joint and several debts, and since his death having been divided *pro rata* amongst joint and separate creditors, (the appellant with a full knowledge of all the facts, taking on such *pro rata* distribution a large proportion thereof,) it is right, that the principle of our statute, that among creditors of the fourth class "equality is equity," by which the Probate Justice was guided in making the order appealed from, should prevail in the settlement of Ransom's estate, and that the order of the Probate Court should be affirmed.

We understand that our Statute of Wills, above referred to, prescribes a different rule for the distribution of an insolvent estate, when there are joint and separate creditors, from that contended for by the appellant, as the Equity rule. At any rate the Probate Court must be governed by the statute, and if the facts in this case so overrule the rule of decision prescribed by the statute, as to create equities in favor of the appellant, which would warrant the marshalling of assets, (the authorities above extracted to the contrary notwithstanding,) then he must seek relief by bill in Chancery. Such was the opinion of Chief Justice Marshall in *Tucker* v. *Oxley*, 5 Cranch, 35; S. C. 2 Peter's Cond. R. 183. Such was the opinion of the Court in the case of *McCulloh* v. *Dashiell*, 1 Harris & Gill, 95, where it is said: "At law the joint creditors may pursue both the joint and separate estate, unless restrained by a Court of Equity." The same doctrine is asserted by Justice Story in his Commentaries on Equity, Vol. 1, 625. He there says: "The separate creditors of each partner are entitled to be paid out of the separate effects of their debtor, before the partnership creditors can claim anything; which can only be accomplished by the aid of a Court

of Equity, for at law a joint creditor may proceed directly against the separate estate."

The authority cited from 6 Paige, 19, to show that the Surrogate (and by analogy, our Probate Court,) has power to adjust equitable claims, according to the rules of marshalling assets, does not sustain the position. That case simply decides that the Surrogate upon settlement would have power to *liquidate* and ascertain the amount of an unsettled, equitable claim, and that when so ascertained, it should be paid *pro rata* along with other creditors. This may be true, yet it does not shake the above position, that to marshall assets betwixt joint and separate creditors, application must be made to a Court of Equity.

Aside, however, from the question of jurisdiction in the Probate Court, we respectfully contend that according to the authorities cited, the facts in this case take it out of the operation of the general Equity rule, by which the appellant seeks to have it decided, and the judgment below reversed.

To fortify the positions assumed still further, we cite Toller's Law of Executors, 455, note 1. "In Pennsylvania, when a surviving partner dies indebted to partnership and separate creditors, and leaving in the hands of his administrator joint property and also separate property, his whole estate, that is to say his whole separate property, and his whole interest in the joint property, is to be divided among all his creditors (joint and separate,) of equal degree, equally *pro rata.*" *Bell's* Ex'r, v. *Newman's* Adm'r, 5 Sarg. & Rawle, 78. The case of *Allen* v. *Wells,* 22 Pick. 454–5, decided in 1839, holds the following language: "The learned American Commentator on Equity Jurisprudence, in noticing some of the late decisions, remarks: 'that if the true doctrine be that avowed by Sir Wm. Grant in the case of *Devaynes* v. *Noble,* 1 Merivale, 529, and, afterwards affirmed by Lord Brougham, in 2 Russell & Mylne, 494, that a partnership contract is several as well as joint, then there seems no good ground to make any difference between joint and several creditors as to payment out of joint or separate debts.'" 1 Story's Eq. Jur. 626, and Notes.

Ladd *v.* Griswold *et al.*

Chancellor Kent agrees with Sir Wm. Grant and Lord Brougham in the opinion, that a partnership contract is several as well as joint. In the 3d volume of his Commentaries, page 64, he holds the following language: "And it is now held, that a partnership contract upon the death of a partner is in equity to be considered joint and several, and to be treated as the several debt of each partner." If, then, Grant, Brougham and Kent have, in this particular, avowed the true doctrine, "then, (Story being judge,) there seems to be no ground to make any difference whatsoever in any case between joint and several creditors, as to the payment out of joint or separate assets."

We are inclined to think, that for the purpose of sustaining the judgment of the Probate Court, upon the agreed case, it may be supposed, that Grant, Brougham and Kent did speak the law, as above set forth, and that the Probate Court, in saying with Story, (such being the law,) that there was no ground for making any difference between joint and separate creditors, did not err, and that his judgment should be affirmed.

We are informed, that in the settlement of the estate of the late George Forquer, (against whose estate were separate and partnership creditors,) it was, after mature deliberation, considered, that the partnership and separate creditors should be paid *pro rata,* and his estate was so settled accordingly, in the Probate Court.

We will simply add, that one of the most experienced Lawyers of the State, and the only one with whom we have conversed, as to the construction of the 115th and 120th sections of our Statute of Wills, concurs with us in the opinion, that under our statute, the Probate Court must order joint and separate debts to be paid *pro rata,* and that if the creditors should think that their equities require a different mode of paying out the assets, they must seek relief by Bill in Equity.

It would seem, according to the agreed case, that the estate of Ransom Swallow is adequate to the payment of all its debts joint and several, and if so, why reverse the case?

The Opinion of the Court was delivered by

TREAT, J.    Chester and Ransom Swallow, were merchants
and partners in business under the style of C. & R. Swallow.
The partnership was dissolved by mutual consent, Chester
Swallow taking all the effects of the firm, and agreeing to
discharge all of its liabilities.    Subsequently, Chester Swal-
low borrowed of D. Perrin, $1600, and made his promissory
note therefor, with Ransom Swallow and Timothy Ladd as
sureties.    Chester Swallow died insolvent in July, 1843,
leaving this note and many of the partnership debts unpaid.
Ladd paid on the note, $865 in July, 1844, and the balance
of $934 in March, 1845; the aggregate of which sums was
allowed by the Probate Court as a claim against the estate of
Chester Swallow, and on which allowance, Ladd received a
dividend of eighteen cents to the dollar.    Ransom Swallow
died insolvent in February, 1845, and Ladd exhibited a claim
against his estate for $742, for contribution as co-surety on
the Perrin note.    The Probate Court allowed the claim, but
made an order that it be paid *pro rata* with the debts due
from the late firm of C. & R. Swallow.    From this last order,
Ladd appealed to the Circuit Court, and that Court affirm-
ing the decision of the Probate Justice, he has removed the
case into this Court.

It is conceded, that at Law, the individual debts of Ransom
Swallow, and the partnership debts of C. & R. Swallow are
placed on the same footing, and are to be paid *pari passu*
out of the assets; but it is contended, that in Equity, the rule
is different, and the individual creditors are entitled to a
priority in payment.    The general rule by which Courts of
Equity are governed in the administration of the assets of
deceased and insolvent partners, seems to be well established.
If there is partnership property and the separate property
of a partner, the partnership debts are to be paid out of the
proceeds of the joint estate, and the individual debts are to
be paid out of the proceeds of the separate estate.    The
joint and individual debts are to be kept distinct, and the
assets derived from the two estates are to be marshalled

Ladd *v.* Griswold *et al.*

accordingly.  The joint creditors have no claim on the fund arising from the separate estate until the individual debts are satisfied; and on the other hand, the separate creditors can only seek payment out of the surplus of the partnership effects after the satisfaction of the joint liabilities.  Such is unquestionably the rule in Equity, where there is a joint and a separate estate to be distributed among joint and individual creditors. 1 Story's Eq. Jur. §. 675; 3 Kent's Com. 64; Story on Partn. §. 363: *Wilder* v. *Keeler*, 3 Paige, 167; *McCulloh* v. *Dashiell*, 1 Harris & Gill, 96.  It may, however, be necessary to look into the foundation and extent of this equitable rule, and see if it is applicable to the present case.  In the case of a partnership, there is a community of interest and responsibility.  Each partner has a concurrent title to the whole of the partnership property, and he is individually liable for all of the partnership obligations.  He has the specific right to have the joint property faithfully applied to the payment of the joint debts; and after the debts are satisfied, he is entitled to a share of the surplus.  These rights and liabilities continue in most cases after a dissolution of the partnership.  In the case of a dissolution by the death of one of the partners, the surviving partner succeeds to the management and control of the affairs of the partnership; but the personal representatives of the deceased partner are still responsible for the debts, and entitled to participate in the surplus; and they may compel the survivor to make such a disposition of the partnership effects, as will relieve them from responsibility, and enable them to receive their portion of the surplus. While the partnership is progressing, the joint creditors have strictly no equity against the partnership effects.  They have only a cause of action against the partners, on which they may obtain judgment, and then satisfy the judgment out of the joint property, or out of the private property of the partners.  The right in equity of the joint creditors to seek payment out of the partnership effects to the exclusion of the separate creditors of deceased or insolvent partners, results solely from the right of the partners or their repre-

sentatives, to have the joint estate thus applied. The rule is for the benefit and protection of the partners themselves. The equity of the creditor is of a dependent and subordinate character, and is to be worked out and enforced through the medium of the equities of the partner. 1 Story's Eq. Jur.§ 676; Story on Partn. §§ 360, 361. The partners may part with their right to have the joint property applied to the payment of the joint demands; and when they do so, the equity of the creditor is at an end. This is done, where one partner sells out his entire interest in the concern to his copartner. In such case, the purchasing partner takes the property fully discharged from the lien of his copartner; and the equity of the creditors being subordinate to the lien of the partners, the property is wholly freed from the claims of the joint creditors. What before was joint property, now becomes the separate property of one of the partners. There is no longer any joint fund for the payment of the debts, to which the joint creditors may resort through the equities of the partners. On the other hand, the right in equity of the separate creditors to seek payment out of the private estate of the partners, in exclusion of the joint creditors, has its foundation on the ground, that it would be giving the latter an undue advantage to permit them to absorb the joint estate, and then divide the private estate with the separate creditors. It is a doctrine of Equity, that a creditor who has two funds to which he may resort for payment, shall be required to exhaust the one in which he has an exclusive interest, before he goes upon the fund to which another creditor can only resort.

In the present case, there are no partnership effects: The assets consist wholly of the private estate of Ransom Swallow. By the terms of the dissolution, the whole of the partnership effects was transferred to Chester Swallow, and thereby became his separate property, fully discharged of the lien of Ransom Swallow. The latter voluntarily parted with his lien, and relied altogether on the obligation of his copartner, to discharge the liabilities of the firm. There

was consequently no equity of the partners remaining, through the medium of which, the joint creditors could assert any specific claim against the property previously belonging to the partnership.

The question now arises, does the equitable rule before stated apply to cases like the present, where there is no joint estate? On this subject, Mr. Justice Story says: "Where there is no joint estate, the case may seem to be involved in more nicety and difficulty; since, under such circumstances, the creditors would seem, as their contract is several as well as joint, to be entitled, upon general principles, to claim *pari passu* with the separate creditors. However, it cannot be positively affirmed, that such is the settled doctrine in Equity, in cases of deceased partners. On the contrary, there seems to be some conflict of opinion upon the point. In bankruptcy, where there is no joint estate, and there is no solvent partner, joint creditors are permitted to prove against the bankrupt's estate *pari passu* with the separate creditors." Story on Partn. § 363. The rule established in the administration of bankrupt estates, may, with equal propriety, be adopted in the case of deceased partners. There is no difference in point of principle between the two cases. If there is no joint fund to which the joint creditors can resort, and no solvent partner from whom payment can be enforced, they should be allowed to participate equally with the private creditors, in the estate of the deceased partner. The partner, while living, is individually liable for the joint demands, and upon his death, that liability extends to his personal representatives, and may be enforced against them. It is now the settled doctrine in Equity that all partnership contracts are to be considered as joint and several; and on this principle, the joint creditors may proceed at Law against the survivor, and in Equity, against the estate of the deceased partner. 1 Story's Eq. Jur. § 676; Story on Partn. § 362. The joint creditors having the right to charge the estate of the deceased partner, as upon a several contract, and having no joint estate to which he may resort, and no

recourse upon a solvent partner, it would seem to be highly inequitable to restrict him to the surplus of the private estate remaining after the satisfaction of the separate creditors. The Circuit Court decided correctly. No opinion is expressed on the question, whether the Probate Court may exercise equitable jurisdiction in ordering the distribution of assets. The judgment of the Circuit Court is affirmed with costs.*

*Judgment affirmed.*

*This case was argued and decided at the December Term, 1846, but the Opinion was not filed until the present term.