[Civ. No. 516. Third Appellate District.—November 7, 1908.]

## THE CRANE COMPANY, Appellant, v. E. O. DRYER et. al., and W. W. MACHEN, Respondents.

PARTNERSHIP—DEED TO PAY INDIVIDUAL DEBT—CONSENT OF COPARTNER —ACTION BY FIRM CREDITOR TO AVOID DEED.—When one of two partners in whose name stood real estate of the firm, with the consent of his copartner, conveyed it to pay his individual debt for money advanced to him to be put in the business, without any intention of the parties to defraud firm creditors, an existing creditor of the firm who, subsequently to the deed, obtained a judgment. against the firm, cannot maintain an action to set aside the deed.

ID.—DEED NOT CONSTRUCTIVELY FRAUDULENT—FIRM CREDITORS NOT INTERESTED IN FIRM PROPERTY.—Such deed is not constructively fraudulent as to firm creditors, who have no lien upon nor independent interest in the property of the firm, and cannot insist. absolutely, against the agreement of the partners to the contrary,. that all partnership property shall be applied to partnership debts..

ID.—RIGHTS OF PARTNERS AS TO PARTNERSHIP ASSETS—WAIVER BY CONSENT.—Each partner may require, under section 2405 of the Civil Code, that the firm property shall be applied to the payment of firm debts and of any general balance due him; yet the question whether the partnership debts shall be paid out of the firm property before individual debts are paid, or *vice versa,* is a matter which rests. primarily and entirely with the members of the partnership, who may, by mutual consent and agreement, waive the right to apply particular firm property to firm debts, and apply the same to the individual debt of one member.

ID.—EQUITY OF FIRM CREDITORS DEPENDENT UPON EQUITY OF PARTNERS —WAIVER—LOSS OF RIGHT.—The equity of firm creditors is wholly dependent upon the equity of the members of the firm to have the

partnership property applied to the payment of the partnership debts, and must be worked out solely through the medium of the equity of the partners; and when the partners by mutual consent have waived their right as to particular partnership property by agreeing to apply it to an individual debt, the equity of the firm creditors is lost as to such particular property, and they no longer have a right to enforce their demands out of the same.

ID.—RIGHT TO PREFER CREDITOR.—A debtor has the right to prefer one creditor over another, when such preference is not founded in or induced by motives which would amount to a fraud of the rights of other persons or creditors.

APPEAL from a judgment of the Superior Court of Fresno County, and from an order denying a new trial. George E. Church, Judge.

The facts are stated in the opinion of the court.

E. D. Edwards, for Appellant.

J. H. Webb, and S. L. Strother, for Respondents.

HART, J.—The defendants, E. O. Dryer and George Machen, constituted the firm of Dryer & Machen, engaged in the plumbing business at the city of Fresno during the years 1904, 1905 and 1906. On the ninth day of August, 1905, in consideration of and for the payment of an indebtedness due said firm, the firm of C. S. Pierce and others conveyed to George Machen, a member of the said first-mentioned firm, the lots involved in this action. On July 12, 1906, while the firm of Dryer & Machen was indebted to plaintiff in the sum of $1,240, said George Machen conveyed said lots to his father, W. W. Machen, one of the defendants herein. A note had been executed and delivered by Dryer & Machen to the plaintiff in the sum of $1,445.56, and in the month of September, 1906, the latter brought an action against the former on said note, and on the thirteenth day of October, 1906, judgment was rendered in said action in favor of the plaintiff herein and against said Dryer & Machen for the amount of said note. Immediately upon the entry of said judgment, execution thereon was issued and placed in the hands of the sheriff of Fresno county, who, in January, 1907, returned said execution to the superior court without being satisfied either in whole or

in part, the said return disclosing that said officer was unable to find any property belonging to Dryer & Machen out of which said judgment could be satisfied.

The object of this action is to secure a decree of the court, declaring and adjudging the conveyance of the lots in controversy by George Machen to his father, W. W. Machen, to be "fraudulent and void as to this plaintiff, as a firm creditor of said Dryer & Machen, and that the said property thereby conveyed be subject to plaintiff's execution upon its said judgment, and that plaintiff's claim thereto is superior and paramount to any claim of said W. W. Machen, or any individual creditor of any firm upon said property," etc.

The defendants, Dryer and Machen, failed to answer the complaint, and, upon such default, judgment was ordered and entered against them. The court, however, gave the defendant, W. W. Machen, judgment, from which and an order denying it a new trial, the plaintiff takes this appeal.

The complaint alleges that said George Machen "fraudulently and with intent to hinder, delay and defeat the claims of this plaintiff as a firm creditor of said firm" of Dryer & Machen, "conveyed and transferred the legal title to said real estate to W. W. Machen, his own father, by deed of conveyance duly acknowledged and certified, so as to entitle it to be recorded, and it was duly filed and recorded about the same last named date in the office of the County Recorder for Fresno County, California. That there was no other consideration for said conveyance than an alleged individual indebtedness of said George Machen to said W. W. Machen. And said firm and the members thereof were then disposing of and trying to dispose of their property in contemplation of insolvency and were then and are now insolvent, and have no property or assets out of which this plaintiff can have its judgment aforesaid satisfied," etc. It is further charged that the defendant, W. W. Machen, was fully aware of the facts and circumstances, as alleged in the complaint, leading to the conveyance of the real estate involved in this litigation to him by his son.

W. W. Machen, in his answer, specifically denies the material averments of the complaint, and, in addition, asks the court, by way of affirmative relief, that he be reimbursed in a certain sum for expenses incurred by him in relation to the

property, in the event the plaintiff establishes his right to the relief demanded by the complaint.

The contention of the plaintiff is that the transfer of the property concerned in this dispute by George Machen to W. W. Machen, being in payment of the individual indebtedness of said George Machen, was and is, at least, a constructive fraud against the plaintiff as a partnership creditor of said firm of Dryer & Machen.

The evidence shows that the property in dispute was transferred to George Machen by Pierce et al. for the purpose of liquidating a debt due the firm of Dryer & Machen from the former, and that the said firm was the real owner of said property at the time it was conveyed to W. W. Machen by George Machen. The testimony of George Machen is to the effect that he was indebted to his father in an amount approximating the sum of $2,000, the same having been borrowed by him to put into the business of the firm of Dryer & Machen when it was formed; that he transferred the property to his father with the express consent of his partner, Dryer, and that, while the firm owed other persons, no one was pressing it for payment of bills due from it; that there was sufficient property of the firm remaining after said conveyance to his father to meet all outstanding claims against the firm. He testified that his father "wanted his money," and that "goods in the place," accounts due the firm and other property belonging to the firm were enough to meet all the other obligations of the firm. He positively denied that he transferred the real estate to his father with a view of defrauding other creditors. E. O. Dryer, the other member of the firm, testified in part as follows: "The troubles of the firm were considerable about this time; they were crowding us for money. We were being pressed by creditors; attachment suits were threatened. Disposing of our property was talked over. I and George Machen were figuring whether there could be some way to pay it out; whether there couldn't be, and how it would come out, and it was suggested, I believe, that George deed this property to somebody else and try to save it. . . . I couldn't say that W. W. Machen knew the exact condition of the firm. He knew we were financially distressed. I knew he knew that; it was talked over at the time he took the deed from George Machen. I was not present when the deed was made; I came to Inger-

soll's office afterward." T. D. Ingersoll, who drew the deed conveying the property to W. W. Machen, testified that previously thereto he had a conversation with E. O. Dryer and George Machen; that "they both said George had better deed that Effie street property to his father for money George got from him to put in the firm. The deed was drawn up in pursuance to instructions given me by Dryer and George Machen in the conversation just referred to, which was on the day before the execution of the deed, when Dryer and George Machen only were present, . . . and the deed was taken and acknowledged before Van Meter in the presence of Dryer." Immediately upon the execution of the deed and its acknowledgment before Van Meter, a notary, Ingersoll delivered the same to W. W. Machen in the presence of George Machen and Dryer. The grantee thereupon said to George Machen that he would "get the note and credit him with it."

W. W. Machen testified that his son, George Machen, was indebted to him for money advanced to be put into the business of Dryer & Machen; that he desired the return of the money, and that his son gave him a deed to the property in dispute for the purpose of paying off said indebtedness. He testified that he knew nothing, except in a general way, of the firm's financial embarrassment, and that he took the property in good faith in payment of a debt due him from George, and not with any intention of aiding said firm in hindering, delaying or defrauding its creditors, and without any knowledge that said firm desired or intended to hinder or delay the payment of its just debts, if the members thereof had any such intention.

Thus we have given a synopsis of all the evidence from which the court below found the facts of which the judgment is predicated.

The court found "that on the 12th of July, 1906, the property described in plaintiff's complaint stood in the name of George Machen, who held it in trust for said firm of Dryer & Machen"; "that on said 12th of July, 1906, said George Machen conveyed to the defendant, W. W. Machen, by the consent and with the authority of E. O. Dryer, the other member of said firm of Dryer & Machen, the said property in plaintiff's complaint described, which said conveyance was not made with any fraudulent intent by George Machen to hinder,

delay or defraud the plaintiff or any other person as a firm creditor of said Dryer & Machen, but that said conveyance by said George Machen to W. W. Machen was made in good faith for a valuable consideration, to wit, an indebtedness owing by said George Machen to said W. W. Machen, and which said conveyance was made a long time prior to the date of the judgment of the plaintiff herein against said firm of Dryer & Machen''; ''that at the time of said conveyance herein described said defendant, W. W. Machen, had no knowledge of the financial condition of said firm of Dryer & Machen, as to whether said firm was insolvent or not, or that it was indebted to plaintiff, and took said conveyance in good faith and for a valuable consideration, to wit, in payment of said indebtedness owing him by said defendant, George Machen.''

It is apparent, upon a mere inspection of the record, that the evidence abundantly supports the findings of the court. It is consequently clear that the property in dispute was conveyed by George Machen to his father, with the consent and authority of Dryer, in settlement of an indebtedness due from the son to the father, and that said conveyance was not due to any desire or intention on the part of any of the parties to that transaction to hinder, delay or defraud plaintiff or other creditors of the firm of Dryer & Machen.

The single question, then, for consideration is whether the act of George Machen in conveying partnership property in payment of an individual indebtedness is, as to creditors of the firm to which said George Machen belongs, constructively fraudulent. Or, to put appellant's contention in another form, whether debts of a partnership must be discharged from the joint property before any portion of it can be applied to the individual debts of the partners.

The contention of the appellant, as thus stated, is evidently inspired by the provisions of section 2405 of the Civil Code. That section provides: ''Each member of a partnership may require its property to be applied to the discharge of its debts, and has a lien upon the shares of the other partners for this purpose, and for the payment of the general balance if any to him.'' The authorities cited by counsel for appellant only go to the extent of reaffirming the rule as thus declared in our Civil Code. As applied to cases coming within the purview of that section of the code, those authorities most assuredly

state the law correctly. Undoubtedly the code rule proceeds from, and is therefore in perfect harmony with, the soundest principles of equity, for what conceivable reason, unless one not founded in common sense, can be suggested why a member of a partnership should not be authorized to require and compel the application of the partnership property to the discharge of the partnership debts, in preference to the payment by such means of the individual debts of the members of such partnership? Indeed, it would be a distinctly singular and anomalous principle either of equity or of law which would sustain the act of a single member of a partnership in extinguishing his individual obligations out of the partnership effects against the protest and consent of his copartners.

But it is well settled by the decisions of the courts that, whether the partnership debts shall be discharged out of the partnership property before the individual debts of the members of such partnership are thus discharged, or *vice versa,* is a matter which rests primarily and entirely with the members of the partnership. In other words, the right to the application of partnership property to the payment of partnership debts is one exercisable alone by the individual partners. This being so, it follows that partners can, by mutual consent and agreement, waive such right, and where that right has been waived or parted with by the joint, mutual act of the members of a partnership, creditors of such partnership no longer have a right to the enforcement of their demands out of such partnership property as is affected by such waiver. The equity of such creditors, in other words, is lost the moment the partners waive or destroy their right to have the firm debts discharged out of the partnership assets by their mutual agreement to first apply the same to the extinguishment of the individual debts of the members of the partnership, for the equity of the partnership creditors must be worked out through the medium of the equity of the partners. (*Case* v. *Beauregard,* 99 U. S. 119; *Smith* v. *Smith,* 87 Iowa, 93, [43 Am. St. Rep. 359, 54 N. W. 73]; *Baker's Appeal,* 21 Pa. 76, [59 Am. Dec. 754]; *Reyburn* v. *Mitchell,* 106 Mo. 365, [27 Am. St. Rep. 350, 16 S. W. 592]; *Huiskamp* v. *Moline Wagon Co.,* 121 U S. 310, [7 Sup. Ct. Rep. 905]; *Caldwell Bank & Trust Co.* v. *Porter et al.* (Or.), 95 Pac. 1; Am. & Eng. Ency. of Law, p. 238.)

In *Smith* v. *Smith*, 87 Iowa, 93, [43 Am. St. Rep. 359, 54 N. W. 73], the rule is thus stated: "The creditors of a firm have no lien on, or equity in, the partnership property; therefore, with the consent of the partners, it may be applied to the payment of their individual debts, although the firm is insolvent. The partnership creditors are not entitled to set aside such payment as fraudulent as against them. . . . As the rule exists for the protection of the partnership, they may waive its benefits, and when they have done this, the creditors have no ground of complaint."

In the case of *Ladd* v. *Griswold*, 9 Ill. 25, [42 Am. Dec. 445], it is said: "The right in equity of the joint creditors to seek payment out of the partnership effects, to the exclusion of separate creditors of the partners, results solely from the right of the partners to have the joint estate thus applied. The rule is for the benefit of the partners themselves; the equity of the creditors is of a dependent, subordinate character, and has to be worked out and enforced through the medium of the equity of the partners. (Citing Story's Equity, sec. 676, and Story on Partnerships, secs. 360, 361.) The partners may part with their right to have the joint property applied to the payment of the joint demands, and when they do so, the equity of the creditor is at an end."

In the case at bar the evidence, as seen, shows, and the court finds, that the transaction resulting in the payment of George Machen's individual debt out of the partnership property took place about two months before the plaintiff brought this action; that said transaction was had and carried out with the express consent of the only other member of the firm, and that it was had in good faith and with no intention on the part of the members of the firm to defraud other creditors. It is plainly apparent that section 2405 of the Civil Code and the authorities cited by counsel for the appellant have no application to the facts as they were proved and found in the present case. The partners having waived their right to have so much of their partnership property as is involved here applied to the payment of an individual debt of a member of the partnership, the plaintiff, as a creditor of the partnership, has no equity which it can enforce against said property. It may be added that there is no rule of law in this state forbidding a preference by a debtor of one creditor over another,

when such preference is not founded in or induced by motives which would amount to a fraud on the rights of other persons or creditors. To the contrary, our Civil Code (sec. 3432) in express terms gives a debtor the right to pay one creditor in preference to another, or give to one creditor security for the payment of his demand in preference to another.

Some exceptions to the rulings of the court are urged, but they do not appear to be of sufficient importance to compel special notice.

The judgment and order are, for the reasons herein stated, affirmed.

Chipman, P. J., and Burnett, J., concurred.