DOWNER (LORING v.). See Case No. 8,513.

DOWNER & BEMIS BREWING CO. (CORNELL v.). See Case No. 3,236.

## Case No. 4,044.

### In re DOWNING.

[1 Dill. 33; [1] 3 N. B. R. 748 (Quarto, 182); 17 Pittbs. Leg. J. 169; 3 Amer. Law T. 165; 2 Chi. Leg. News. 265; 1 Amer. Law T. Rep. Bankr. 207.]

Circuit Court, D. Missouri. 1870.

BANKRUPTCY — RIGHTS OF INDIVIDUAL AND FIRM CREDITORS—BANKRUPT ACT— CONSTRUCTION OF THIRTY-SIXTH SECTION.

1. Where a partnership has been dissolved and one of the co-partners purchases all of the assets of the firm, and agrees to pay all of the debts, and both partners subsequently become bankrupt, and are individually put into bankruptcy, so that there is no solvent partner and no firm property: *Held*, under the bankrupt act of 1867 [14 Stat. 517], that the creditors of the firm, as well as the individual creditors of the partner who assumed to pay the firm debts, were entitled to share pari passu in the estate of such partner.

[Cited in Emery v. Canal Nat. Bank, Case No. 4.446; Re Dunham, Id. 4,144; Re Rice, Id. 11,750; Re Tesson, Id. 13,844; Re McEwen, Id. 8,7 3: Re Isaacs, Id. 7,-093; Re Webb, Id. 17,317; Re Hamilton, 1 Fed. 812: Re Lloyd, 22 Fed. 90; Re West, 39 Fed. 203.]

2. Under the bankrupt act (section 36) assets are to be marshalled between the firm creditors and the separate creditors of the partners only when there are firm and separate assets and proceedings are instituted against the firm and the individual members, as provided in that section.

[Cited in Re Knight, Case No. 7,870; Re Long, Id. 8,476: Re Rice, Id. 11,750; Amsinck v. Bean. 22 Wall. (89 U. S.) 404; Re Litchfield, 5 Fed. 50.]

The facts in the case, which were agreed to by the respective counsel, show that the bankrupt, William Downing, and one Richard W. Emerson, were co-partners under the firm name of Downing & Emerson, and as such were dealers in boots and shoes in the city of St. Louis, previous to December, 1868; that in the month of December, 1868, they dissolved by consent, Downing purchasing the stock of goods and all other assets of the firm, and agreeing to pay off and discharge all of its liabilities, and executing and delivering to Emerson, for his (Emerson's) supposed interest in the concern, his notes. amounting to about $40,000; that said firm was then largely indebted and actually insolvent; that after the dissolution of said firm, Downing continued in his individual name, and for his individual account, to prosecute the business at the same place until the 16th day of August, 1869; that while so doing business alone, Downing, in the regular course of business, disposed of part of said stock of goods, added to it by further purchases, paid off some of the liabilities of the old firm, and contracted further liabilities and debts in his own name alone; that on the 16th day of August, 1869, Downing executed a conveyance or assignment of all his assets, including the assets which came

[1] [Reported by Hon. John F. Dillon, Circuit Judge, and here reprinted by permission.]

from the firm of Downing & Emerson, to John W. Kennan, as trustee, for the equal benefit of all his individual creditors, and the creditors of said firm; that the trustee (Kennan) thereafter disposed of the stock of goods, realizing about $60,000 for it, and when he had done so, Downing was proceeded against and adjudicated a bankrupt by the said district court; that thereafter said Kennan paid over to the said assignee in bankruptcy, John A. Allen, the whole of the proceeds of the sale of said stock of goods; that the co-partnership of Downing & Emerson was never adjudicated bankrupt as such, nor have the persons holding claims against it released Emerson from liability on such claims, but that Emerson has also been adjudicated a bankrupt in the state of Massachusetts; that claims against the bankrupt Downing, individually, as well as claims against him as one of the said co-partnership of Downing & Emerson, have been proven and allowed against his estate without any distinction, except so far as the evidences of debt upon which the proofs were made would show any, and that all these creditors voted for the said assignee; that before he was adjudicated a bankrupt, and after the 16th of August, 1869, Downing executed and delivered to each one of the creditors of Downing & Emerson an agreement in the following form:—"Whereas, the firm of Downing & Emerson, which was composed of William Downing and Richard W. Emerson,—was, in the month of December, A. D. eighteen hundred and sixty-eight, dissolved; and whereas said Emerson assigned to said Downing all his said Emerson's interest in the property and assets of said firm, and said Downing, in consideration thereof, gave said Emerson certain promissory notes, and agreed to assume and pay all the liabilities and debts of said firm of Downing & Emerson, and hold said Emerson harmless from the same, and I have agreed to pay the debts and liabilities of said firm, as my own private individual debts, and the party with whom this agreement is made may now have debts and claims against said firm: Now, therefore, I, the said Downing, for value received by me of ——, the receipt whereof is hereby acknowledged, do hereby covenant and agree with said ——, that I, individually, will pay, as my own private and individual debts, all and singular the debts, liabilities, and claims against said firm of Downing & Emerson, held by said ——. Witness my hand and seal, this —— day of September, 1869." At a meeting of the creditors of said William Downing, called by and held before Register Eaton, for the purpose of distributing the said $60,000, some of the individual creditors of Downing, who became such creditors after the dissolution of the firm of Downing & Emerson, filed a motion insisting that they and other individual creditors of Downing, were alone entitled to share in the distribution of said fund, while on the other hand, those of the creditors who held debts against Downing & Emerson made the same claim. Then the question arose as to how the distribution should be made, and that is the question certified. The district judge gave the following opinion or decision: "Upon the facts submitted, the court rules that the separate creditors of the bankrupt must be first paid in full before the partnership· creditors can receive any dividends from the funds in the hands of the·assignee." To this decision and ruling the assignee excepted and prosecuted this appeal. It was also admitted in the argument in the district court, that Downing was adjudicated a bankrupt upon the petition of an individual creditor.

Hitchcock & Lubke, for appellant.
Sharp & Broadhead, for appellee.

Before DILLON, Circuit Judge, and KREKEL, District Judge.

DILLON, Circuit Judge. The court finds this to be a very difficult case. The difficulty arises rather from the state of the authorities, all of which have been brought to our attention by the industry of counsel, than from any doubt in the mind of the court as to how it ought, on principle, to be decided. As an early determination is desired, we shall refrain from an extended examination of the cases cited or elaborate exposition .of our views, and content ourselves with indicating briefly the grounds of our judgment. On either of two grounds the order appealed from is, in our opinion, erroneous.

1. This is a contest between the individual creditors of Downing, and those who became the creditors of the firm of Downing & Emerson, before its dissolution. It is admitted that Downing purchased of Emerson all "the goods .and assets of the firm." There is no joint property. Emerson is a non-resident of this state, and is also insolvent and in bankruptcy. The ground on which the individual creditors claim priority is that, by the sale from Emerson to Downing, the property became the individual property of the latter, and that upon the well known equity rule. recognized, as it is claimed by the bankrupt act (section 36), they, as the individual creditors of the bankrupt. are entitled to be paid out of his separate estate in preference to the firm creditors. This rule, upon the agreed statement, has no application to the case. Downing, when he purchased the assets from Emerson. agreed with the latter "to pay off and discharge all the liabilities" of the firm. This contract was binding on Downing, and so far as he is concerned, made these debts his own. As between Downing and Emerson, the former thereby became the sole and individual debtor. As between Downing and the creditors. the latter had the legal right, if they deemed it to be for their interest, to treat Downing as individually liable to them on his promise to Emerson, for their benefit.

In equity, the promise which Downing made to Emerson to pay these debts, could be enforced against him; and this controversy is to be decided upon equitable principles. Indeed, a promise by one to another for the benefit of a third person may, according to the prevailing American doctrine, be enforced at law in the name of the latter, especially where, as in the case at bar, the promissor receives a fund or property with which to make such payment. "In this country," says Mr. Parsons, "the right of a third party to bring an action on a promise made to another for his benefit, seems to be somewhat more positively asserted, and we think it would be safe to consider this the prevailing rule with us; indeed, it has been held that such a promise is to be deemed made with a third party, if adopted by him, though he was not cognizant of it when made." 1 Pars. Cont. (5th Ed.) 467, 468, and cases cited. "After some conflict of opinion, it seems now to be settled in cases of simple contract, that if one person makes a promise to another for the benefit of a third, the latter may maintain an action upon it, though the consideration did not move from him." 2 Greenl. Ev. § 109, and cases there cited. That Downing received, in the surrender to him of the assets, a sufficient consideration for his promise, cannot be disputed. By this promise he is bound, and the creditors of the firm are in equity entitled to enforce it against him. It is, on their election to avail themselves of it, cumulative to their other rights. They need not release the firm in order to be able to get the benefit of this promise, made by one of its members, for their benefit. If Downing had secured this promise by mortgage, can it be doubted that equity (aside from the bankruptcy) would give the creditors the benefit of this security if they desired it? The right of the creditors given by the arrangement between Downing and Emerson is not defeated by the subsequent bankruptcy of Downing. They may assent to and claim the benefit of it at any time, either before or after bankruptcy of their debtor. I look upon their rights in equity as being the same as if Downing had individually indorsed the pre-existing firm paper, in which case they could have proved their debt against either, if not indeed against both the firm and Downing. It would be strange if the parties could, by the same transaction, make the assets individual property, but could not, with the assent of the creditors, make one of the firm debtors, also, individually liable. It carries out the contract precisely to hold that the parties made the property the individual property of Downing, and that the latter superadded to the existing liability to the creditors, his individual liability.

2. But if the foregoing views should be erroneous, I am of the opinion that the same result is reached by the true construction of the bankrupt act of 1867. In the case at bar, it will be remembered, the partnership had ceased to exist. There were no firm assets. Both of the members of the firm were separately in bankruptcy, and insolvent. Under these circumstances, the creditors of the former firm of Downing & Emerson had, under section 19 of the bankrupt act, a right to prove their debts against the estate of Downing—especially as he had, for a valuable consideration, assumed to pay them. If no proceedings are taken against the partnership, under section 36 of the bankrupt act (which contemplates cases where there are both firm and individual assets and debts) firm debts may, as stated, be proved under section 19, are entitled to share pro rata under section 27, as it extends to "all creditors whose debts are duly proved," and are embraced in the discharge provided for in sections 32. 33, and 34. These sections provide for a discharge from "all debts and claims," and the use of the word "partner" in section 33, shows that it was contemplated that one partner might, under the antecedent provisions of the act, be entitled to be discharged for, or in respect of, partnership debts. In other words, section 36 of the bankrupt act only comes into operation when there are firm assets, and the proceedings are instituted against the firm and each of its members, in which case the assets are to be marshalled according to the equity rule, firm creditors to have priority as respects the joint assets, and individual creditors as respects the separate estate of their debtor. This construction of the bankrupt act has the merit of producing that equality, which it is the leading and manifest purpose of the act to secure, and in effect reaches the result which the English chancellors have felt bound by equitable principles to adopt, viz.: That where there is no joint estate and no solvent partner, all the creditors, joint and separate, shall share, pari passu in the estate of the bankrupt partner.

Upon the facts submitted. this court is of the opinion that all of the creditors of the said bankrupt who had proved their claims before the register. were, and are, entitled to share pro rata in the distribution of the estate of the bankrupt, whether their debts were originally against the firm of Downing & Emerson, or against Downing, individually. This court is therefore of the opinion that the court below erred in holding that the individual creditors of Downing were entitled to priority, and its judgment is reversed, and the assignee ordered to make an equal distribution of the estate among all the creditors whose claims have been duly established and registered. Reversed.

NOTE. Bankrupt Act—Rights of Individual and Firm Creditors under the 36th Section. Followed. In re Isaacs & Cohn [Case No. 7,093]; In re Rice [Id. 11,750]; In re Tesson [Id. 13,844]: In re Long & Corey [Id. 8,476]; In re Knight [Id. 7,880]; In re McEwen [Id. 8,783]: In re Hamilton, 1 Fed. 812; In re Litchfield, 5 Fed. 48, 50. Cited.

Amsinck v. Bean, 22 Wall. [89 U. S.] 404; Emery v. Canal Nat. Bank [Case No. 4,446]; In re Webb [Id. 17,317].