### In re GREEN.

(District Court, N. D. Iowa, W. D. June 2, 1902.)

1. BANKRUPTCY—PARTNERSHIP CREDITORS—WHEN ENTITLED TO SHARE IN INDIVIDUAL ESTATE.

Where all the property of a partnership has been sold, and the partnership dissolved, the provisions of section 5, Bankr. Act 1898, are not applicable on the subsequent bankruptcy of one of the partners; and unless it appears that there is a solvent partner, or that other equities exist in favor of individual creditors which should be protected, a partnership creditor is entitled to share with the individual creditors in the estate.

2. SAME—DEBTS ENTITLED TO PREFERENCE—TAXES AGAINST PARTNERSHIP.

Under the provision of Code Iowa, § 1317, that "any individual of a partnership is liable for the taxes due from the firm," taxes levied against a firm become an individual debt of a partner, and by virtue of Bankr. Act 1898, § 64a, must be paid from his estate in bankruptcy as a preferred claim.

In Bankruptcy. On exceptions to ruling of referee on claim of O'Brien county for taxes.

George Wamback and O. H. Montzheimer, for creditors.

J. A. Wilcox, for O'Brien county and bankrupt.

SHIRAS, District Judge. From the record in this case it appears that on May 28, 1901, William C. Green was adjudged a bankrupt upon a petition filed against him by his creditors. It further appears that prior to October, 1899, the bankrupt and one N. H.

Green had been engaged in business at Sheldon, Iowa, under the firm name of W. C. Green & Co., and during the years 1897, 1898, and 1899 there were assessed taxes against said firm in the aggregate sum of $240, being the taxes levied for state and county purposes. About October 1, 1899, the firm was dissolved and ceased to do business, leaving of the taxes unpaid the sum of $191.88. Subsequently William C. Green entered into the mercantile business at Everly, Iowa, and continued the same until December 23, 1900, when he sold out his stock, converting the same into realty, which has been sold by the trustee in bankruptcy. The treasurer of O'Brien county filed with the trustee a statement showing the amount due for taxes assessed against the firm of W. C. Green & Co., and demanded payment in full thereof, and thereupon the question was submitted to the referee whether these taxes were payable out of money realized from the assets of W. C. Green. The referee held that the amount due for taxes could not be recognized either as a preferred claim or as a general claim entitled to share with the claims held by the creditors of W. C. Green, this conclusion being reached upon the theory that the provisions of section 5 of the bankrupt act were applicable to the situation, and that, therefore, the taxes assessed against the firm could not be paid out of the proceeds of the individual property of the bankrupt, as the amount thereof was not sufficient to pay the individual debts, and therefore there was no surplus remaining, after the payment of the individual debts, which could be applied to the payment of the taxes in question.

In the agreed statement of facts certified up by the referee it is stated that the firm of W. C. Green & Co. was dissolved, and the stock of goods owned by the firm was sold to third parties, on or about October 1, 1899. Consequently there is not now involved in these proceedings any partnership estate, nor any state of facts which calls for a marshaling of the assets as between partnership and individual creditors. In support of the ruling made, the referee cites the case of In re Wilcox (D. C.) 94 Fed. 84, wherein will be found a learned discussion of the general proposition by Judge Lowell, who reaches the conclusion that the partnership creditors cannot be allowed to share with the individual creditors in the assets of one member of the firm, even though there are no firm assets and no proceedings against the firm. If I correctly understand the ruling in this case, it is, in effect, that section 5 of the bankrupt act is not to be limited to cases wherein the proceedings are against the firm as well as the individual members, but that it is to be construed to establish the broad principle that the individual creditors of the bankrupt are to be paid in full out of his assets before the claims owing by him as a member of the firm can be allowed to share in his assets, even though the firm had long since been dissolved, and there are no firm assets to be applied to the payment of the firm debts. This question was involved in the case of In re Keller (D. C.) 109 Fed. 118, wherein this court held that as there had been a valid transfer of the partnership property to one of the partners, Almon D. Keller, who subsequently went into bankruptcy as an individual, and trans-

ferred to his trustee all of his property, including that which had formerly belonged to the partnership, the firm creditors would be permitted to share equally with the individual creditors in the assets of the estate. This conclusion was based largely upon the fact that the supreme court in Fitzpatrick v. Flannagan, 106 U. S. 648, 1 Sup. Ct. 369, 27 L. Ed. 211, had declared the equitable rule to be as follows:

"The legal right of a partnership creditor to subject the partnership property to the payment of his debts consists simply in the right to reduce his claim to judgment and to sell the goods of his debtor on execution. His right to appropriate the partnership property specifically to the payment of his debt in equity, in preference to creditors of an individual partner, is derived through the other partner, whose original right it is to have the partnership assets applied to the payment of partnership obligations. And this equity of the creditor subsists so long as that of the partner, through which it is derived, remains; that is, so long as the partner himself 'retains an interest in the firm assets, as a partner, a court of equity will allow the creditors of the firm to avail themselves of his equity, and enforce through it the application of those assets primarily to payment of the debts due them, whenever the property comes under its administration.' Such was the language of this court in Case v. Beauregard, 99 U. S. 119, 25 L. Ed. 370, in which Mr. Justice Strong, delivering the opinion, continued as follows: 'It is indispensable, however, to such relief, when the creditors are, as in the present case, simple contract creditors, that the partnership property should be within the control of the court, and in the course of administration, brought there by the bankruptcy of the firm, or by an assignment, or by the creation of a trust in some mode. This is because neither the partners nor the joint creditors have any specific lien, nor is there any trust that can be enforced until the property has passed in custodia legis.' Hence it follows that 'if, before the interposition of the court is asked, the property has ceased to belong to the partnership, if by a bona fide transfer it has become the several property of one partner or of a third person, the equities of the partners are extinguished, and consequently the derivative equities of the creditors are at an end.'"

In view of this authoritative declaration that the equities of the partnership creditors are derived from the equity of the partners, and that it is within the power of the partners to put an end to the equities of the firm creditors, by a bona fide transfer of the firm assets to one partner or to a third party, wherein is the equity in the ruling that, in cases wherein the equity of the firm creditors has been terminated, not through their act nor with their consent, but by the act of the partners in selling the firm assets to one of their number or to a third party, and subsequently members of the firm are put into bankruptcy as individuals, the individual creditors are entitled to exclude the firm creditors from sharing in the assets until the individual debts are paid in full? In such cases there is no other fund to which the firm creditors can resort for payment, and the practical result of the rule laid down in the Wilcox Case is that, in all cases wherein the equity of the firm creditors has been destroyed by the action of the partners, in converting the firm property into individual assets by a sale thereof to one of the partners the individual creditors are entitled to be preferred, and are entitled to exclude the firm creditors from sharing in these assets, even though they were originally the property of the firm. A very large proportion of the cases brought in bankruptcy under the provisions of the present act are cases where-

in the bankrupts have been members of one or more partnerships which have been dissolved long since, and in which the only assets are those belonging to the individual bankrupt; and, if it be the rule that the individual creditor is always entitled to be first paid from the individual assets, it follows that in all these cases the debts due the firm creditors are discharged, yet these creditors are barred from any share in the assets of the bankrupt.

The variant views set forth in the numerous decisions cited in the Wilcox Case serve to show that it is practically impossible to formulate a single general rule that will meet the equities of every case, but the adoption of the rule that in every instance wherein there are firm and individual creditors, but the assets are individual only, the latter class of creditors are to be paid in full to the exclusion of the firm creditors, will certainly work injustice in so many cases that I should hesitate long before accepting it in the absence of a controlling decision by an appellate court. The supreme court having decided that the firm assets may be converted into individual assets by the action of the partners, I cannot see the equity in the view that holds, in effect, that it is within the power of the partners to terminate the equity of the firm creditors in the firm assets, and that the same act which terminates the equity of the firm creditors creates a preference in favor of the individual creditors, enabling them to secure payment in full of their claims out of funds which in many cases are wholly or largely the proceeds of property which was originally firm assets.

Under the provisions of the act, courts of bankruptcy are clothed with ample equitable powers to make proper application of the equitable principles recognized by the act for the protection of all who are interested in the several estates coming up for administration. The same general questions arose under the act of 1867, and in this circuit the rule to be followed was settled by the decision of Circuit Judge Dillon in the case of In re Downing, 1 Dill. 33, 7 Fed. Cas. 1,005, wherein it was held that the marshaling of assets between the creditors of the firm and the separate partners was not called for except in cases wherein there were firm and separate assets, and proceedings in bankruptcy were instituted against the firm and the individual members, and that in cases wherein there were no firm assets and no solvent partner the creditors of the firm were entitled to share in the estate of the bankrupt partner. This decision of Judge Dillon was cited approvingly by the supreme court in Amsinck v. Bean, 22 Wall. 395, 22 L. Ed. 801, it being therein declared that "assets are to be marshaled between the creditors of the copartnership and the separate creditors of the partners only when there are partnership assets and separate assets of individual partners, and proceedings have been instituted against the partnership and the individual members, as provided in the thirty-sixth section of the bankrupt act." The construction thus placed upon section 36 of the act of 1867 is applicable to the provisions of section 5 of the present act, and, if this be true, then section 5 does not define the rule to be followed in cases wherein the firm is not brought into

bankruptcy, and there are no firm assets under the control of the court. It is doubtless true that in some cases wherein there are firm creditors, but the partnership is not brought into bankruptcy, the individual creditors may have equities which should be protected, but in these cases the court, having full equitable powers, can take such action as may be needed to protect the individual creditors. The court, where the facts justify it, can enforce the equitable principle that if a creditor or a class of creditors have the right to look to more than one source or fund for the payment of the debts due them, while another class can look to one only of such funds or sources for payment, the former can be required to first exhaust the resources not open to the other class, before being permitted to share in the fund common to both classes; and one application of this general principle is provided for in clause "h" of section 5, wherein provision is made for settling the affairs of partnerships not brought into bankruptcy, but in which the bankrupt is interested as a partner. Believing that the powers of the court are sufficient to fairly protect the equities of individual creditors, where the facts justify it I cannot concur in the general conclusion reached by the referee that, in cases wherein an individual is adjudged a bankrupt, parties to whom he is indebted, in connection with other persons as partners, cannot share in his estate with his individual creditors, it not appearing that there is any solvent partner from whom the debt can be collected, nor any partnership assets to which the firm creditors can look for payment of their just claims.

There is a further reason why it seems clear that the exceptions to the finding of the referee must be sustained, growing out of the nature of the claim presented by the county in this case. By the last clause of section 1317 of the Code of Iowa it is enacted that "any individual of a partnership is liable for the taxes due from the firm," and when the state and county taxes assessable against the firm of W. C. Green & Co. were levied William C. Green became individually liable therefor by reason of the statutory provision just cited; and section 64 of the bankrupt act declares that "the court shall order the trustee to pay all taxes legally due and owing by the bankrupt to the United States, state, county, district or municipality in advance of the payment of dividends to creditors." If the taxes in question are due and owing from the bankrupt, then they must be paid before any dividends are made to the creditors, and the cited provision from the Code of Iowa certainly makes the bankrupt individually liable for the taxes assessed against the firm.

The exceptions to the finding of the referee are therefore sustained, and the referee is directed to enter an order directing the trustee to pay the taxes in question in accordance with the requirements of section 64 of the bankrupt act.