## CASE v. BEAUREGARD.

A member of a firm assigned and transferred in good faith his interest in the partnership property in payment of a just debt for which he was solely liable. The creditor took possession of it and sold it to A., who, by an act of sale, in which the other member of the firm united, transferred it for a valuable consideration to B. The firm and the members of it were insolvent. C., claiming to be a simple-contract creditor of the firm, then filed his bill to subject the property to the payment of his debt. *Held*, that C. had no specific lien on the property, and there being no trust which a court of equity can enforce, the bill cannot be sustained.

APPEAL from the Circuit Court of the United States for the District of Louisiana.

This suit was brought July 10, 1869, by Frank F. Case, receiver of the First National Bank of New Orleans, against Gustave T. Beauregard, Thomas P. May, Augustus C. Graham,

George Binder, Alexander Bonneval, Joseph Hernandez, the New Orleans and Carrollton Railroad Company, and the Fourth National Bank of New York, to recover a debt of $237,000.89, which he claimed was due from, and had been contracted by, Beauregard, May, and Graham, while they were partners, and carrying on business as such; and to have certain transfers of partnership property set aside and subjected to the payment of the debt. Beauregard leased, April 12, 1866, from that company its railroad tracks, its rolling-stock, and corporate privileges for twenty-five years. The lease, although made to him individually, was entered into on his part in view of a partnership to conduct the enterprise, which on the first of that month was formed between him, May, and Graham, for operating under that lease the road. By the terms of the partnership, which was to continue for twenty-five years from the date of the lease, he was charged with the management of the road, was to receive only a salary for his services, and when the capital furnished by May and Graham was reimbursed to them with eight per cent interest, the partners were to share the profits equally, and all losses were to be equally borne by them. On their part, May and Graham were to furnish the requisite capital, fixed at $300,000. Locomotives had been used on the road, but after the date of the lease the tracks were adapted to horse-cars, important changes effected, and large purchases of property made, for the uses and better equipment of the road, all of which involved a heavy expenditure of money.

May 16, 1867, May assigned his interest to the United States. Graham, on the 8th of that month, assigned his interest to the Fourth National Bank of New York. The bank failed in that month, and was a creditor of the partnership. The latter had overdrawn, between Sept. 6, 1866, and May 1, 1867, the account kept in that institution in the name of Beauregard, as such lessee. At that time, May was president of the bank. He directed the treasurer of the partnership to draw upon the bank without regard to the state of the accounts, and instructed the paying teller to honor the checks, promising to make good the deficit. It amounted to the sum for which this suit was brought. No part of it has ever been paid to the bank. At one time, May deposited with it, as cash, a demand note for

$40,000, drawn by him as attorney for Beauregard. At another time, he drew a draft upon Graham for $125,000, which was also credited upon the account as cash. Neither the draft nor the note was paid. Both were held by the bank, and were overdue at the time of its failure.

May had obtained from the assistant treasurer of the United States at New Orleans public moneys, he knowing them to be such, for his individual uses. In part payment of this indebtedness he assigned, with other property, the balance to his credit on the books of the bank, amounting to $315,779.10, and his interest in the railroad company, its property and appurtenances, and bound himself to execute any further acts or instruments necessary to give a complete title to the property transferred. A few days thereafter, May 16, 1867, he, claiming to act under a power of attorney from Graham, conveyed, by an act passed before a notary public of New Orleans, to the United States " all and singular the right, title, interest, share, property, claim, and demand of every nature and kind whatsoever, of them, the said May and Graham, and each of them, in and to the New Orleans and Carrollton Railroad, the lease and other franchises thereof, and the railroad tracks, rolling-stock, engines, cars, live-stock, and other appurtenances thereunto belonging or in any wise appertaining; " the same having been acquired under the lease and the articles of partnership aforesaid. The United States was to give him credit for all that should be received from the proceeds of the sale or other disposition of the interest conveyed.

The United States, Oct. 31, 1867, in consideration of $228,-000, conveyed the property so acquired by said act to Binder, Bonneval, and Hernandez, and further stipulated to save them harmless from any claim that might be set up by the bank for $112,009.09, apparently standing to the debit of Beauregard, as lessee of the road, but which the act declares was due by May, and to defend the transferees from an assignment of Graham's interest to the Fourth National Bank of the City of New York. The transferees assumed the liabilities due and owing by Graham and May, as lessees, on account of the railroad, as set out in a schedule of direct debt, amounting to $122,852.58, and of prospective debt for additions, $40,000, — making $162,852.58.

Oct. 15, 1867, Binder, Bonneval, and Hernandez joined Beauregard in an agreement or act of fusion with the railroad company, whereby they surrendered to the latter all interest they had in the lease of the road and property of the partnership; and the company, being thus restored to the property and franchises with which it had parted, entered into the possession thereof. May, Graham, and Beauregard are insolvent.

An act of the legislature was passed, by which the company was authorized to scale its present stock, issue additional shares of its capital stock to the extent of the value of the improvements placed on the road during the partnership, and to consolidate its interests with the other parties. Accordingly the company increased its stock so as to make it $800,000, of which one equal moiety, or $400,000, was awarded to Binder, Hernandez, Bonneval, and Beauregard, as representing in their right the value of the improvements put on the road by the late partnership, whose interests to the extent of two-thirds had passed to the purchasers from the United States, the other one-third being owned by Beauregard; and for and in consideration of the $400,000 of its capital stock, the New Orleans and Carrollton Railroad Company acquired and was put into possession of all the real estate and other property acquired by the late partnership of May, Graham, and Beauregard.

For the amount mentioned in his assignment, as standing to his individual credit, May gave a " certified " check, of which the United States is the present holder and owner. Of the amount transferred from the bank to the sub-treasury in New Orleans, enough was applied to take up a check drawn by May on the bank, dated Feb. 15, 1867, and forming part of the assets of the assistant treasurer at New Orleans, and the remainder, $10,378.28, was credited on his check for $315,779.10.

The complainant charges that the First National Bank, being the creditor of the partnership, had a lien or privilege on its effects, and was entitled to be paid therefrom to the exclusion of the creditors of any member of the partnership; that the partnership was insolvent; that none of its members was able to pay his individual debts, or authorized to dispose of the partnership property for the payment of such debts; that the deed to the United States, its deed to Binder, Bonneval, and Hernan-

dez, and the deed of the latter parties and Beauregard to the railroad company, are in fraud of the rights of the bank as a creditor of the partnership, and that the same should be cancelled and the partnership property sold to satisfy the prior and privileged claim of the bank.   He prays that Binder, Bonneval, Hernandez, and Beauregard be enjoined from transferring or incumbering their stock in the company, and that the latter be enjoined from recognizing or permitting such transfer, and for general relief.

Bonneval, Binder, Hernandez, and the Carrollton Railroad Company answered, and pleaded the existence of the debt due from the bank to May as a bar to any claim upon them under the allegations of the bill.

The Fourth National Bank also answered.

The bill was dismissed on a final hearing, and the complainant appealed here.

*Mr. J. D. Rouse* and *Mr. Charles Case* for the appellant.

The object of the bill is to subject partnership assets to the payment of a partnership debt.   Such assets belong to the partnership.   Each partner is entitled only to a share of what remains after payment of partnership debts and a settlement of accounts.   *Bank* v. *Carrollton Railroad*, 11 Wall. 628, and the authorities there cited.

The Code of Louisiana gives a statutory protection to the rights of a creditor of the partnership, recognizing those which the courts of chancery have elsewhere established, and adding thereto in his favor a privilege upon partnership assets.   The latter are a trust fund, or the common pledge of the partnership creditors, who must be paid out of it before the creditors of the respective partners; and the transfer by one of the latter in payment of his separate debts is a fraudulent conversion of the assets, and his creditors take as against those of the firm no title thereto.   *Hagan et al.* v. *Scott*, 10 La. 345; *Gardiner et al.* v. *Smith*, 12 id. 370; *Claiborne et al.* v. *Creditors*, 13 id. 279; *Bank of Tennessee* v. *McKeage*, 11 Rob. (La.) 130; *Moore* v. *Hampton et al.*, 3 La. Ann. 192; *Smith* v. *McMicken*, id. 319; *Saloy* v. *Albrecht*, 17 id. 75; *Succession of Beer*, 12 id. 698; *Dwight* v. *Simon*, 4 id. 496.

At the time of the transfer by May of the property in ques-

tion, in part payment of his individual indebtedness, his creditor knew that the partnership was indebted to the bank. All subsequent purchasers, when they acquired their respective interests, were cognizant of the same fact. The partnership and all of its members are insolvent, and its only creditor is the bank. The partnership property being largely *in esse*, and in possession of one of the defendants, is accessible only by the aid of a court of chancery. The bank has no remedy at law, and it is not necessary that the claim be established by judgment. The complainant is, therefore, entitled to relief in equity. *Russell* v. *Clark's Executors*, 7 Cranch, 69; *Thurmond* v. *Reese*, 3 Ga. 449; *Croone* v. *Bivens*, 2 Head (Tenn.), 339; *Cornell* v. *Radway*, 22 Wis. 260; *Sanderson* v. *Stockdale*, 11 Md. 563; *Innes* v. *Lansing*, 7 Paige (N. Y.), 583; *O'Brien et al.* v. *Coulter et al.*, 2 Blackf. (Ind.) 421.

*Mr. John A. Campbell* and *Mr. Henry C. Miller* for the appellee.

*Mr. Assistant Attorney-General Smith* for the United States.

MR. JUSTICE STRONG delivered the opinion of the court.

The object of this bill is to follow and subject to the payment of a partnership debt property which formerly belonged to the partnership, but which, before the bill was filed, had been transferred to the defendants. There is little if any controversy respecting the facts, and little in regard to the principles of equity invoked by the complainant. The important question is, whether those principles are applicable to the facts of the case.

No doubt the effects of a partnership belong to it so long as it continues in existence, and not to the individuals who compose it. The right of each partner extends only to a share of what may remain after payment of the debts of the firm and the settlement of its accounts. Growing out of this right, or rather included in it, is the right to have the partnership property applied to the payment of the partnership debts in preference to those of any individual partner. This is an equity the partners have as between themselves, and in certain circumstances it inures to the benefit of the creditors of the firm. The latter are said to have a privilege or preference,

sometimes loosely denominated a lien, to have the debts due to them paid out of the assets of a firm in course of liquidation, to the exclusion of the creditors of its several members. Their equity, however, is a derivative one. It is not held or enforceable in their own right. It is practically a subrogation to the equity of the individual partner, to be made effective only through him. Hence, if he is not in a condition to enforce it, the creditors of the firm cannot be. *Rice* v. *Barnard et al.*, 20 Vt. 479; *Appeal of the York County Bank*, 32 Pa. St. 446. But so long as the equity of the partner remains in him, so long as he retains an interest in the firm assets, as a partner, a court of equity will allow the creditors of the firm to avail themselves of his equity, and enforce, through it, the application of those assets primarily to payment of the debts due them, whenever the property comes under its administration.

It is indispensable, however, to such relief, when the creditors are, as in the present case, simple-contract creditors, that the partnership property should be within the control of the court and in the course of administration, brought there by the bankruptcy of the firm, or by an assignment, or by the creation of a trust in some mode. This is because neither the partners nor the joint creditors have any specific lien, nor is there any trust that can be enforced until the property has passed in *custodiam legis*. Other property can be followed only after a judgment at law has been obtained and an execution has proved fruitless.

So, if before the interposition of the court is asked the property has ceased to belong to the partnership, if by a *bona fide* transfer it has become the several property either of one partner or of a third person, the equities of the partners are extinguished, and consequently the derivative equities of the creditors are at an end. It is, therefore, always essential to any preferential right of the creditors that there shall be property owned by the partnership when the claim for preference is sought to be enforced. Thus, in *Ex parte Ruffin* (6 Ves. 119), where from a partnership of two persons one retired, assigning the partnership property to the other, and taking a bond for the value and a covenant of indemnity

against debts, it was ruled by Lord Eldon that the joint creditors had no equity attaching upon partnership effects, even remaining in specie. ' And such has been the rule generally accepted ever since, with the single qualification that the assignment of the retiring partner is not *mala fide*. *Kimball* v. *Thompson*, 13 Metc. (Mass.) 283; *Allen* v. *The Centre Valley Company et al.*, 21 Conn. 130; *Ladd* v. *Griswold*, 9 Ill. 25; *Smith* v. *Edwards*, 7 Humph. (Tenn.) 106; *Robb and Others* v. *Mudge and Another*, 14 Gray (Mass.), 534; *Baker's Appeal*, 21 Pa. St. 76; *Sigler & Richey* v. *Knox County Bank*, 8 Ohio St. 511; *Wilcox* v. *Kellogg*, 11 Ohio, 394.

The joint estate is converted into the separate estate of the assignee by force of the contract of assignment. And it makes no difference whether the retiring partner sells to the other partner or to a third person, or whether the sale is made by him or under a judgment against him. In either case his equity is gone. These principles are settled by very abundant authorities. It remains, therefore, only to consider whether, in view of the rules thus settled and of the facts of this case, the complainant, through any one of the partners, has a right to follow the specific property which formerly belonged to the partnership, and compel its application to the payment of the debt due from the firm to the bank of which he is the receiver.

The partnership, while it was in existence, was composed of three persons, May, Graham, and Beauregard, but it had ceased to exist before this suit was commenced. It was entirely insolvent, and all the partnership effects had been transferred to others for valuable considerations. None of the property was ever within the jurisdiction of the court for administration.

On the 8th of May, 1867, Graham, one of the partners, assigned all his right and interest in any property and effects of the partnership, and whatever he might be entitled to under the articles thereof, together with all debts due to him from the partnership or any member thereof, to the Fourth National Bank of the City of New York. By subsequent assignments, made on the 14th and 16th of May, 1869, May, the second partner, transferred all his interest in the partnership property

to the United States, and by the same instruments transferred
to the United States, by virtue of a power of attorney which
he held, the interest of Graham.   On the 21st of August,
1867, the United States sold and transferred their interest
obtained from May and Graham in all the partnership prop-
erty, including real estate, to Alexander Bonneval, Joseph
Hernandez, and George Binder.   On the 15th of October next
following, an act of fusion was executed between the New
Orleans and Carrollton Railroad Company, Beauregard, Bon-
neval, Hernandez, and Binder, by which the rights of all the
parties became vested in the railroad company, subject to the
debts and liabilities of the company, whether due or claimed
from the lessee or the stockholders.

The effect of these transfers and act of fusion was very clearly
to convert the partnership property into property held in sev-
eralty, or, at least, to terminate the equity of any partner to
require the application thereof to the payment of the joint
debts.   Hence if, as we have seen, the equity of the partnership
creditors can be worked out only through the equity of the
partners, there was no such equity of the partners, or any one
of them, as is now claimed, in 1869, when this bill was filed.
No one of the partners could then insist that the property
should be applied first to the satisfaction of the joint debts, for
his interest in the partnership and its assets had ceased.
*Baker's Appeal*, 21 Pa. St. 823.   That was a case where a firm
had consisted of five brothers.   Two of them withdrew, dispos-
ing of their interest in the partnership estate and effects to the
other three, the latter agreeing to pay the debts of the firm.
Some time after, one of the remaining three sold his interest in
the partnership property to one of the remaining two partners.
The two remaining, after contracting debts, made an assign-
ment of their partnership property to pay the debts of the last
firm composed of the two ; and it was held that the creditors of
the first two firms had no right to claim any portion of the
fund last assigned, and that it was distributable exclusively
among the creditors of the last firm.   So in *McNutt* v. *Strayhorn
& Hobson* (39 id. 269), it was ruled that though the general rule
is that the equities of the creditors are to be worked out through
the equities of the partners, yet where the property is parted

with by sale severally made, and neither partner has dominion or possession, there is nothing through which the equities of the creditors can work, and, therefore, there is no case for the application of the rule. See also *Coover's Appeal*, 29 id. 9. Unless, therefore, the conveyances of the partners in this case and the act of fusion were fraudulent, the bank of which the complainant is receiver has no claim upon the property now held by the New Orleans and Carrollton Railroad Company, arising out of the facts that it is a creditor of the partnership, and was such a creditor when the property belonged to the firm.

The bill, it is true, charges that the several transfers of the partners were illegal and fraudulent, without specifying wherein the fraud consisted. The charge seems to be only a legal conclusion from the fact that some of the transfers were made for the payment of the private debts of the assignors. Conceding such to have been the case, it was a fraud upon the other partners, if a fraud at all, rather than upon the joint creditors, — a fraud which those partners could waive, and which was subsequently waived by the act of fusion. Besides, that act made provision for some of the debts of the partnership. And it has been ruled that where one of two partners, with the consent of the other, sells and conveys one half of the effects of the firm to a third person, and the other partner afterwards sells and conveys the other half to the same person, such sale and conveyances are not *prima facie* void, as against creditors of the firm, but are *prima facie* valid against all the world, and can be set aside by the creditors of the firm only by proof that the transactions were fraudulent as against them. *Kimball* v. *Thompson*, 13 Metc. (Mass.) 283; *Flach et al.* v. *Charron et al.*, 29 Md. 311. A similar doctrine is asserted in some of the other cases we have cited; and see 21 Conn. 130. In the present case we find no such proof. We discover nothing to impeach the *bona fides* of the transaction, by which the property became vested in the railroad company.

Thus far we have considered the case without reference to the provisions of the Louisiana Code, upon which the appellant relies. Art. 2823 of the Code is as follows: "The partnership property is liable to the creditors of the partnership in preference to those of the individual partner." We do not

perceive that this provision differs materially from the general rule of equity we have stated. It creates no specific lien upon partnership property, which continues after the property has ceased to belong to the partnership. It does not forbid *bona fide* conversion by the partners of the joint property into rights in severalty, held by third persons. It relates to partnership property alone, and gives a rule for marshalling such property between creditors. Concede that it gives to joint creditors a privilege while the property belongs to the partnership, there is no subject upon which it can act when the joint ownership of the partners has ceased. Art. 3244 of the Code declares that privileges become extinct " by the extinction of the thing subject to the privilege."

What we have said is sufficient for a determination of the case. If it be urged, as was barely intimated during the argument, that the property sought to be followed belongs in equity to the bank, or is clothed with a trust for the bank, because it was purchased with the bank's money, the answer is plain. There is no satisfactory evidence that it was thus purchased. It cannot be identified as the subject to the acquisition of which money belonging to the bank was applied.

The bank has, therefore, no specific claim upon the property, nor is there any trust which a court of equity can enforce; and it was well said by the circuit justice, that, without some constituted trust or lien, " a creditor has only the right to prosecute his claim in the ordinary courts of law, and have it adjudicated before he can pursue the property of his debtor by a direct proceeding " in equity.

*Decree affirmed.*