## In re KELLER.

(District Court, N. D. Iowa, C. D. May 27, 1901.)

1. BANKRUPTCY—PROVABLE CLAIMS—PREFERENCES.

One partner in a mercantile firm purchased the interest of his copartner, assumed the debts of the firm, and continued the business for a short time, when he filed a petition in bankruptcy. The firm was not adjudged a bankrupt, and neither the retiring partner nor the firm creditors made any objection to the treatment of the property formerly owned by the partnership as the individual property of the bankrupt. *Held*, that a creditor of the firm could prove his claim against the estate of the bankrupt only on surrendering preferential payments received from the firm within four months prior to the filing of the petition, and while the firm was insolvent.

2. SAME.

A partial payment made by an insolvent to a creditor within four months prior to his bankruptcy constitutes a preference which the creditor must surrender, as a condition precedent to his right to prove his debt against the bankrupt's estate, without regard to the knowledge or belief of insolvency when the payment was made on the part of either debtor or creditor.

3. SAME—DEDUCTION OF NEW CREDITS.

Bankr. Act 1898, § 60c, providing that "if a creditor has been preferred and afterwards in good faith gives the debtor further credit

without security of any kind for property which becomes a part of the debtor's estate, the amount of such new credit remaining unpaid at the time of the adjudication in bankruptcy may be set off against the amount which would otherwise be recoverable from him," does not entitle such a creditor to a deduction of the new credit from the preferences which he is required to surrender before proving his claim, but is applicable only to cases where the preference was received under such circumstances as to be voidable under clause "b" of the same section, and the trustee is compelled to bring suit to recover the property or its value. In such case the creditor is debarred from proving his claim against the estate, but the recovery against him is limited by such provision to the difference between the preferential payment and the new credit, which represents the net loss to the estate through the two transactions.

4. SAME—CONTESTED CLAIMS—EVIDENCE.

Upon an issue made by a trustee on the right to prove a claim against the estate, testimony of witnesses taken before the referee upon other issues in the bankruptcy proceedings, to which the claimant was not in fact a party, and when he was not present, is not admissible, and cannot be considered by the referee.

In Bankruptcy. On certificate of referee with respect to the claim of the Warfield-Pratt-Howell Company.

C. L. Nourse, for creditor.
J. L. Kamrar, for trustee.

SHIRAS, District Judge. From the record certified up by the referee, it appears that in 1897 the firm of Keller & Stake, composed of Almon D. Keller and J. P. Stake, commenced business as retail merchants at Webster City, Iowa, and in that name the business was carried on until early in the year 1900, when a Mr. Lee was taken into the firm; he remaining as a partner until September of that year, when he withdrew from the firm; and the business was continued under the original name of Keller & Stake until November 15th, when Keller bought out the interest of his partner, buying all of the partnership property and agreeing to pay its debts. Almon D. Keller carried on the business in his individual name until December 24, 1900, when he filed his individual petition in bankruptcy; and after adjudication thereon Charles B. Stoddard was appointed trustee of the estate, and took possession of the stock of goods and other assets of the bankrupt. From the time the firm of Keller & Stake commenced business, in 1897, the Warfield-Pratt-Howell Company, wholesale grocers of Des Moines, sold goods on credit to the different firms, and also to Almon D. Keller; and on the 7th of January, 1901, the company filed its claim with the referee in bankruptcy, stating therein "that the said Almon D. Keller  *  *  *  is justly and truly indebted to said corporation in the sum of five hundred sixty-three and $94/100$ dollars; that the consideration of said debt is as follows: For merchandise sold and delivered as per certified statement hereto attached, marked 'Exhibits A & B.'" Exhibit A is a statement showing sales of merchandise to Keller & Stake from October 1 to November 12, 1900, both inclusive, to amount of $410.79, with a credit of $7.31 goods returned, leaving a balance due of $403.48. Exhibit B is a statement showing sales to Almon D. Keller from November 19 to December 18, 1900, both

inclusive, to the amount of $161.71, with a credit of $1.25 for goods returned, thus leaving a balance due of $160.40. The claim as thus filed was allowed by the referee, and thereupon, on February 28th, the trustee filed a petition before the referee, asking that the order of allowance thus made should be set aside, on the ground that it now appeared that within four months next preceding the filing of the petition in bankruptcy the bankrupt had paid to the Warfield-Pratt-Howell Company the sum of $314.73 on account; he being, at the times the payments were made, insolvent and unable to pay his indebtedness in full. The company took issue upon the allegations of this petition, and further alleged that since the date of the payments it had in good faith sold to the firm of Keller & Stake merchandise to the amount of $563.94, which had become part of the bankrupt's estate. A hearing upon the issues thus presented was had before the referee, and, taking into consideration the evidence submitted during the pendency of the bankruptcy proceedings, the referee found that since the 24th of August, 1900, the firms of Keller, Stake & Lee and Keller & Stake, as well as the individuals, J. P. Stake and Almon D. Keller, had been in fact insolvent; and therefore it was held that the payment received of $171.70 from the firm of Keller & Stake on the 2d of October, 1900, was a preferential payment; that, upon repaying this amount to the trustee, it would be open to the company to prove its claim in the sum of $735.64, or the claimant, without repaying any amount, might prove its claim in the sum of $160.64 for the goods sold Almon D. Keller after November 15, 1900. To this ruling the claimant excepted, and now brings the case before the court for a review of the decision of the referee.

Counsel for the claimant take the position that the payment of the $171.70 on October 2, 1900, was made by the firm of Keller & Stake; that the partnership has not been adjudged a bankrupt; and that, as the court in bankruptcy has before it only the individual estate of Almon D. Keller, it cannot deal with payments made by the pre-existing firm of Keller & Stake, nor can it undertake to marshal the firm and individual assets in this proceeding. The fact, however, that the partnership has not been adjudged a bankrupt, prevents the question of the marshaling of assets from arising in this case. The claimant, as shown by the proof of debt filed by it, assumes the position of a creditor of Almon D. Keller. There is no case before the court in which it can undertake to separate the debts and property of a firm from that of the individual partners, as is provided for in section 5 of the bankrupt act. When J. P. Stake sold his interest in the partnership to Keller, the property became the individual property of the latter, and it passed, as such, to his trustee in the bankruptcy proceedings. Neither Stake nor the firm creditors have initiated any proceedings for the enforcement of any supposed equities or rights in the property formerly belonging to the firm, and therefore the referee rightly ruled that the claims filed by the company could only be viewed as a claim against Keller. Thus, in Fitzpatrick v. Flannagan, 106 U. S. 648, 1 Sup. Ct. 369, 27 L. Ed. 211, it is said:

"The legal right of a partnership creditor to subject the partnership property to the payment of his debt consists simply in the right to reduce his claim to judgment, and to sell the goods of his debtor on execution. His right to appropriate the partnership property specifically to the payment of his debt, in equity, in preference to creditors of an individual partner, is derived through the other partner, whose original right it is to have the partnership assets applied to the payment of partnership obligations. And this equity of the creditor subsists so long as that of the partner through which it is derived remains; that is, so long as the partner himself 'retains an interest in the firm assets, as a partner, a court of equity will allow the creditors of the firm to avail themselves of his equity, and enforce through it the application of those assets primarily to payment of the debts due them, whenever the property comes under its administration.' Such was the language of this court in Case v. Beauregard, 99 U. S. 119, 25 L. Ed. 370, in which Mr. Justice Strong, delivering the opinion, continued as follows: 'It is indispensable, however, to such relief, when the creditors are, as in the present case, simple-contract creditors, that the partnership property should be within the control of the court, and in the course of administration, brought there by the bankruptcy of the firm, or by an assignment, or by the creation of a trust in some mode. This is because neither the partners nor the joint creditors have any specific lien, nor is there any trust that can be enforced until the property has passed in custodia legis. Hence it follows that 'if, before the interposition of the court is asked, the property has ceased to belong to the partnership, if by a bona fide transfer it has become the several property of one partner or of a third person, the equities of the partners are extinguished, and consequently the derivative equities of the creditors are at an end.' "

This ruling is repeated in Huiskamp v. Wagon Co., 121 U. S. 310, 7 Sup. Ct. 899, 30 L. Ed. 971.

In the case now under consideration there was a valid transfer of the partnership property to Almon D. Keller. This transfer has not been questioned by any one. When Keller went into bankruptcy, he did so as an individual, and he transferred to the trustee all his property, including that which had formerly belonged to the firm of Keller & Stake. Under these circumstances, the court in bankruptcy cannot deal with the estate in any other light than as the individual estate of Almon D. Keller. The claims of the creditors of the late firm of Keller & Stake can be proved only as claims against the bankrupt, and this is what was done by the claimant in this case; for, as already stated, in the proof of claim filed before the referee the averment is that "Almon D. Keller, the person by whom a petition for adjudication of bankruptcy has been filed, was at and before the filing of said petition, and still is, justly indebted to said corporation in the sum of $563.94"; and it is thus made clear that the claimant bases its right to share in the estate on the ground that it occupies the position of a creditor of the individual, Almon D. Keller, and its rights are just what they would be if the business had always been carried on by Keller as an individual. Counsel in their argument are fruitful in suggesting possible complications that might occur in the future in case the firms were put into bankruptcy, in that, if the claimant should repay in this case the money received from the firm within the four months preceding the adjudication in bankruptcy, it might be called upon to make a like repayment as a condition to proving its claim in the proceedings against the firm. Cases in bankruptcy are in equity, and it does not seem probable that a court of equity would find an insuperable difficulty in holding that

one repayment actually made under such circumstances would be recognized in all subsequent proceedings as a full performance on part of the creditor of the duty to refund preferential payments received from an insolvent debtor. Having chosen to file its claim for goods sold to the firm of Keller & Stake as part of its claim against Keller alone, the company cannot be allowed to say that it should not be held to account for payments received from the firm. The question is not the one that would arise in case the trustee of Almon D. Keller should sue a third party to recover back money paid him by the firm on a firm debt on the ground that such payment was a preference. In this case the creditor seeks the aid of the court of bankruptcy, and asks to be allowed to prove up against Almon D. Keller alone a claim for goods sold to the firm of Keller & Stake. It appearing that within a few months preceding the adjudication in bankruptcy the claimant had received a payment on account from the firm, it being then insolvent, the referee rightly held that the claimant must repay the amount received from the firm, as a condition to being allowed to prove up the firm debt against the estate.

It is further urged in support of the exceptions taken to the ruling of the referee that the evidence shows that the payments made to and received by the Warfield-Pratt-Howell Company were so made in the usual course of business, and without knowledge on part of the company of the insolvency of the firm of Keller & Stake; and therefore the claimant should not be required to repay the moneys received by it, as a condition to the allowance of the claim filed on its behalf. This question was very fully considered by the court of appeals for the Seventh circuit in the case of In re Ft. Wayne Electric Corp., 39 C. C. A. 582, 99 Fed. 400; and the conclusion was reached that a creditor to whom a payment on account has been made by an insolvent debtor cannot prove up his claim in bankruptcy until he has repaid the sum received, even though when he received it he did not know or have cause to believe that the debtor was insolvent. This court followed this ruling in Re Sloan, 102 Fed. 116, believing the same to be the correct interpretation of the act, and nothing has been adduced in argument in the present case to show that such interpretation is not the proper one. There are decisions which hold the contrary rule, which is well stated by Judge Purnell in Re Ratliff (D. C.) 107 Fed. 80, as follows:

"That when a payment on account is made to an innocent creditor, in the due course of business, within four months of bankruptcy, when the debtor did not know he was insolvent, such payment is not a preference which must be surrendered as a condition precedent to allowing proof of claim. This seems to be the proper, reasonable construction of the statute, the purpose of which was to provide for an equitable distribution of the bankrupt estate; to promote, and not destroy, business, and benefit, not punish, innocent creditors as well as bankrupts."

Does the rule followed in these cases in fact provide for an equitable distribution of bankrupt estates, or does the contrary rule destroy or improperly impede business transactions or punish innocent creditors? The bankrupt act may be said to be based upon two fundamental propositions: First, that when a person becomes unable to pay his just debts the property then remaining to him equit-

ably belongs to his creditors, and should be distributed proportionately among them; and, second, that, if the insolvent debtor in good faith yields up to his creditors his property for distribution among them, he should then be relieved from the debts existing against him at the time he transfers his property to his creditors. The first proposition is not based upon the question of good faith on part of the debtor, nor upon his knowledge or want of knowledge of his actual financial condition. It rests upon the fact of insolvency; and the equity in favor of the creditors grows out of the fact that it is ordinarily true that the estate possessed by the insolvent debtor represents the goods, property, or money obtained by the debtor on credit from his creditors. If in fact the debtor is insolvent, and if in fact he has in possession property which he has bought on credit and which has not been paid for, is not the equity in favor of the creditors fully established, without reference to the mere belief which the debtor may entertain with respect to his ability to pay his debts? It is a matter of common knowledge that persons who are hopelessly insolvent will frequently cling to the belief that they can pay up if only allowed a little time, yet, if time be allowed them, they only become more heavily involved. It cannot, therefore, be successfully maintained that the equity of creditors to the estate of an insolvent debtor is in any true sense dependent upon or affected by his belief touching his actual condition. This equity cannot, however, be carried into effect except through legal machinery; and to that end, among others, the present bankrupt act has been adopted. When, through the provisions of that act, an estate of an insolvent debtor has been brought before the court of bankruptcy for distribution, is it not true that among the creditors the general rule is that "equality is equity"; that is to say, that in the division of the estate each creditor shall receive only his proportionate share of the estate? It must be remembered that the institution of the proceedings in bankruptcy does not create the equity in favor of the creditors, but only sets in motion the machinery by which the equity can be properly enforced. The equity on behalf of the creditors comes into existence when the debtor becomes insolvent. Therefore it is that in bankruptcy proceedings, in order to secure equality among the creditors, it is permissible to take into consideration all dealings between the debtor and his several creditors that have taken place since the date of his insolvency; that being the time when the equity of the creditors arises. If after the debtor has become insolvent he pays one or more creditors a portion of their debts, and then proceedings in bankruptcy are instituted, and the estate is being administered, and the creditors to whom payments were made are allowed to retain the sums paid them, and to prove up the balance of their claims, is it not clear beyond question that these creditors would be thus permitted to obtain a larger share of the estate than the others, and this increased amount or preference would have been obtained by them after the common debtor had become insolvent? The fact of the preference being received does not depend on the amount of knowledge the bankrupt or the creditors had of his financial condition. To secure absolute equality among the creditors, it should be provided that all

payments made or security given after the debtor has become insolvent must be repaid, so that the estate owned by the bankrupt at the time he became insolvent and the time the equity of the creditors in such estate came into being should be ratably applied to the payment of all debts due. The reasoning which holds that payments made after insolvency, but in so-called "good faith," are not preferences, because the debtor and the preferred creditors did not know that the debtor was insolvent, ignores the fact that the real question is, what claim have the other creditors upon the estate of the debtor after he in fact has become insolvent? Have they not the right to assert their equity to the proportionate share of the estate of the debtor, which equity came into existence at the date of insolvency, and therefore before the payments were made to the favored crditors? If payments made after actual insolvency can be retained by a creditor, and he can also share equally with the other creditors in the remaining estate, he certainly gets a larger share of the insolvent estate. Section 60 of the act declares that:

"A person shall be deemed to have given a preference if, being insolvent, he has * * * made a transfer of any of his property * * * and the effect of such transfer will be to enable any one of his creditors to obtain a greater percentage of his debt than any other of such creditors of the same class."

In brief, the statutory declaration is that if, being insolvent, a party makes a transfer of property to a creditor, which will enable the latter to obtain a greater percentage of his debt than other creditors of the same class, that constitutes a preference. In the face of the clear language of the statute, why should courts endeavor to read into this definition a limitation to the effect that if the debtor, though in fact insolvent, did not know it, a transfer made by him will not constitute a preference, even though it does enable the creditor receiving it to obtain a much greater share of the insolvent's estate? It is said in Re Ratliff, supra, that the purpose of the bankrupt act "is to provide for an equitable distribution of the bankrupt estate"; but how is this purpose subserved by a construction of the act which enables one or more creditors to obtain the greater share at the expense of equally meritorious claimants? The argument in support of this view of the act is largely based upon the assumption that, unless this construction is given to the law, it will greatly interfere with ordinary business transactions, and therefore it must be assumed that congress did not intend to enact that which the language of section 60 would naturally indicate. What undue interference, however, is really caused to proper business transactions by giving the statute the construction adopted by the court of appeals in the Ft. Wayne Electric Corp. Case, supra? Even if the debtor be in fact insolvent, the creditor is justified in receiving all payments offered him. If the debtor is not adjudged a bankrupt, no one can call the creditor to account for the payments received. If the debtor is adjudged a bankrupt, then the statute gives the creditor the right to determine what his action will be; it being open to him to retain the payments received, and not to seek any further share in the insolvent estate, or to return the payments, and then to share proportion-

ately in the distribution of the entire property. In giving this option to the creditor, the act deviates from the strict rule of absolute equality among the creditors of an insolvent estate, but it is a concession made to meet the objection that the provisions of the law should not be so strict that they will cause undue interference with the ordinary routine of business. The act therefore recognized the fact that if a creditor who, in the ordinary course of business, receives payments on account from a debtor, would be compelled, in case of the bankruptcy of the debtor, to repay these amounts, it might be a great embarrassment to the creditor, leading possibly in some cases to his own insolvency; and, to avoid such possibilities, the act, as already said, gives the option to the creditor to determine whether he will retain the payments received or not. But the giving this option does not authorize the creditor to retain the payments, and also to share with other creditors in the remaining estate, on the ground that, though in fact the debtor was insolvent when the payments were made, he was ignorant of his true condition, and the payments were made in the ordinary course of business. The inequity of such action on part of the creditor is not in the fact that he received payment from an insolvent debtor in the ordinary course of business, but in the fact that, after the court of bankruptcy has taken charge of the insolvent estate for the purpose of distributing the same equitably among all the creditors, the creditor asks the court to permit him to retain the payments made him, and, in addition thereto, to give him an equal share with the other creditors in the estate yet to be distributed. If he is permitted so to do, he will receive a larger share of the insolvent estate than the other creditors, or in fact will be a preferred creditor, and I am unable to see any sufficient reason for giving a strained construction to the act in order to bring about such a result. As the ruling of the referee on this question was in accord with the decision of this court in Re Sloan, 102 Fed. 116, wherein this court adopted the conclusions reached by the court of appeals in the Seventh circuit in Re Ft. Wayne Electric Corp., 39 C. C. A. 582, 99 Fed. 400, as a correct exposition of the law, the exceptions taken to the ruling of the referee are overruled.

The remaining question presented by the exceptions under review is whether a sum due for goods sold on credit by the company after the reception of the payments made by Keller & Stake can be set off against such payment, under the provisions of clause "c" of section 60 of the act. This question was before this court in Re Christensen, 101 Fed. 802; and the conclusion was reached that the set-off provided for in clause "c" was intended to apply only to cases wherein the trustee, under the provisions of clause "b," recovered from the creditor the preference received by him, and could not be availed of by a creditor seeking to prove up the balance of a claim upon which he had received preferential payments. Since the decision by this court, the question has been decided adversely to the view taken thereof in Re Christensen by the court of appeals for the Seventh circuit, in McKey v. Lee, 105 Fed. 923; and the argument is pressed that the later ruling, being by a court of appeals, should be followed, and the undoubted strength of this contention compels this court to

carefully reconsider the question, not contenting itself with citing its prior decision in Re Christensen as decisive of the ruling to be made. In McKey v. Lee it is said that the rule that confines the right of set-off to cases wherein the trustee enforces a recovery of the preferential payment cannot be accepted, for the reason that, "confessedly, it would limit the right of set-off to those only who, having received the preference knowingly, chose to stand out against its return to the trustee. The creditor willing to make return without the delay and expense of a suit by the trustee, even though the preferential payments had been innocently received, could exercise this impulse towards obedience to the law only under penalty of losing what otherwise his recalcitrancy would have secured him. We ought not to lean towards an interpretation that would thus put the consenting creditor at a disadvantage, and afford a premium to the designing creditor." In determining the effect of the different constructions contended for, regard must be paid to the other provisions of the act providing for the right to file and have allowed claims against the bankrupt. If a creditor, having received a preference, surrenders the same to the trustee, he is allowed to prove his entire claim, just the same as though no preferential payment had been made thereon. If, however, a creditor, having received a preference under circumstances enabling the trustee to recover the same, does not surrender the same, and thus compels the trustee to incur the cost and expense of a suit in order to recover the preference, then the creditor will not be permitted to prove his claim. As was said in Re Richter's Estate, 1 Dill. 544, Fed. Cas. No. 11,803:

"A creditor who received goods by way of fraudulent preference, and who refuses the demand therefor which the assignee is authorized to make, denies his liability, allows suit to be commenced by the assignee, defends it, goes to trial, is defeated, and judgment passes against him, which he satisfies on execution, cannot be said, within the meaning of the statute, to have surrendered to the assignee the property received by him under such preference. He has surrendered nothing. He accepted a fraudulent preference, and defended it to the last. Paying a judgment which he stoutly resisted, and from which he could not escape, is not such a surrender as the statute contemplates. To hold that it was would be against the spirit of the statute, which is to discourage preferences. Such a holding would manifestly encourage them, for, if the transaction should be upheld, the creditor would profit; if overthrown, he would lose nothing, and stand upon an equal footing with those over whom he had attempted to secure an illegal advantage, and whom he has, by litigation, delayed in the collection of their claims."

Notwithstanding the difference in the language of the acts of 1867 and 1898, the purpose of the latter act is identical with that of the earlier enactment with reference to preferences; and the reasoning of Judge Dillon in the case just cited, wherein he held that the creditor could not contest with the assignee, and then, being defeated, prove up his claim, upon the theory that he had surrendered the preference received, is applicable to the present act. It would certainly be wholly inequitable to hold that a creditor who has received a preference from an insolvent debtor can refuse to account therefor, and after causing to the other creditors the delay, cost, and expense of litigation, after being defeated therein, can still prove up his claim, and take an equal share in the proceeds of the estate after

depleting the same in the manner stated. Contesting the claim of the trustee, and paying back the preference in obedience to the process of the court, is not a surrender, within the meaning of clause "g" of section 57. Therefore there is this difference between a preferred creditor who surrenders the preference and a preferred creditor from whom the preference is recovered by the trustee: The former, having voluntarily surrendered the preference received, is entitled to prove up his entire claim, and share with the other creditors. The latter, having refused to surrender, cannot prove the claim or share in the estate. In determining the rule to be applied in case of a preferred creditor who surrenders his preference, and thereby entitles himself to share in the estate, it is the rights and equities of the other creditors that must be considered; and certainly a construction which would give the creditor receiving a preference an advantage over the others should, if possible, be avoided. If, however, it be held that the creditor receiving the preference may set off against the amount thereof a sum due for goods sold on credit after receiving the preference, does he not in fact secure a preference thereby? For illustration: A. is selling goods on credit to B. in the usual course of business, and on January 1st the indebtedness amounts to $1,000. B., being in fact then insolvent, pays $500 on account; and on January 15th A. sells him on credit goods to the amount of $500, and on February 1st B. is adjudged a bankrupt. The account then stands: $1,500 due for goods sold; credit of $500 for cash paid. C. is also selling B. goods on credit, and on January 15th the sum due is $1,500. B. then makes a payment of $500 to C. According to the view taken in McKey v. Lee, supra, when these creditors come to prove up their respective claims A. would be allowed to set off against the preferential payment of $500 the amount due for goods sold January 15th, thus receiving pay therefor in full, and would prove the balance of his claim, to wit, $1,000, whereas C. must repay the $500 received, and prove up his entire claim of $1,500. If the dividend paid should be 40 cents on the dollar, A. would receive for the $1,500 of goods by him sold to the bankrupt the $500 preferential payment and a 40 per cent. dividend on $1,000, or $400, making $900 in all; whereas C., for a like claim of $1,500, would be compelled to repay the $500 received, and receive a dividend of 40 per cent. on $1,500, or $600 in all, being $300 less than the amount received by A. Why should A. be thus preferred over C.? Further, take a case wherein A. and a number of others sell goods on credit to B. After B. becomes in fact insolvent, he pays A. on account $500, and subsequently buys goods on credit to the same amount from A., and is then adjudged a bankrupt. If A. is allowed to set off the amount due for the subsequent sale of goods against the preferential payments received by him, he in fact receives pay in full for part of his account, receiving an equal dividend with the other creditors on the balance of his account, whereas the other creditors are compelled to content themselves with a dividend on the full amount of their claims. Why should this preference be allowed to A. as against the other creditors? In no proper sense can it be said that applying the contrary rule is inflicting a punishment upon an innocent creditor. As is well said

by Judge Morrow, speaking for the court of appeals for the Ninth circuit in Re Fixen, 42 C. C. A. 354, 102 Fed. 295, 50 L. R. A. 605:

"The creditor is not compelled to surrender a payment made to him on account, in the ordinary course of business, unless he has reason to believe that his debtor is insolvent and that a payment is a preference. If the creditor is innocent in the transaction, he has his option to retain the payment and waive his claim to the balance of the account, or he may surrender the payment and present his claim for the whole account. He will do that which will be to his best interest, and his loss, in any event, will be one of degree."

It must be kept clearly in mind that the question now under consideration arises only in connection with cases wherein a creditor, having received a preference, proposes to surrender the same and prove up his claim. The statute gives him the right to retain the preferential payment, it having been received in ignorance of the insolvent condition of the debtor, in which case he cannot further participate in the distribution of the insolvent estate, or he may waive the advantage given him by the payment received, by returning the same into the estate; and then he may prove the entire debt due him, and share proportionately with the other creditors in the distribution to be made. He cannot be permitted to retain the preferential payment by applying it in discharge of that part of his claim which came into existence after the payment was received, and to prove up the balance of the debt due him, for this would certainly give him a preference over the other creditors. The effect on the rights of the other creditors is just the same if the claimed set-off is allowed as it would be if the amount of the set-off was allowed on the entire claim. In either event it results in giving a preference to the one creditor,—a result contrary to the fundamental principle of equality among creditors; and it is a result not demanded by the clear language of clause "g" of section 57, but can only be sustained by reading into this clause the provisions of clause "c" of section 60, which is not in pari materia, in that this clause refers to cases wherein a creditor having received a preference under circumstances which do not give him the option to retain it at his pleasure, but which make it his duty to return it to the trustee, refuses so to do, and compels the trustee to enforce the recovery thereof, in which case the creditor is debarred from proving any part of his claim. When the situation is viewed with reference to the rights of the other creditors, it seems clear beyond all question that in order to prevent the creditor receiving payments after the actual insolvency of the debtor, and who seeks to share in the further distribution of the estate, from getting a share larger than the other creditors whose equities are equal to his, it must be held that the set-off provided in clause "c" of section 60 is not applicable, but this right of set-off must be restricted to cases wherein the trustee enforces a recovery of the preference from the creditor receiving it under the provisions of clause "b" of section 60. The reason for authorizing the set-off provided for in clause "c" is that the creditor who is compelled at the suit of the trustee to yield up the preference received is debarred from proving his claim or sharing in the distribution of the estate, and it is deemed equitable to limit the recovery against him to the net loss caused to the estate

through the preferences received by him. Thus, if the creditor receives a preferential payment of $500 under circumstances enabling the trustee to recover it back, but after receiving the payment he sells to the debtor $250 of goods on credit, he thus increases the estate by that amount, and in fact the remaining creditors are only injured to the extent of $250 as a result of the two transactions; and by authorizing the set-off of the goods sold after the reception of the preference, and limiting the recovery by the trustee to the difference between the preferential payment received and the amount of goods subsequently sold on credit and added to the insolvent estate, the equities of the other creditors are fully protected. This right of set-off, however, extends only to the class of cases wherein the preferred creditor, by refusing to surrender the inequitable preference received by him, is debarred from proving his claim and from sharing in the distribution of the estate; and the reason for the adoption of the right of set-off in such cases does not exist in cases wherein a creditor has innocently received a preferential payment from an insolvent debtor. In the latter class of cases the preferred creditor cannot be compelled to repay the preference received. He is given the option of determining whether he will retain the payment and not ask a further share in the estate, or whether he will surrender the preference received and stand on an equality with the other creditors. If he elects to surrender the preference received and share equally with the other creditors, he cannot be permitted to apply the preference received to the payment in full of so much of his claim as was created after the reception of the preference, and to surrender to the trustee only the amount of the preference left after paying in full part of his claim, because he would then be clearly preferred over the other creditors; and that would be the necessary result if the rule stated in McKey v. Lee, supra, is followed. In the opinion in that case it is said that "we ought not to lean towards an interpretation that would thus put the consenting creditor at a disadvantage, and afford a premium to the designing creditor." If it is the correct construction of the present bankrupt act that a preferred creditor who refuses to surrender the preference received, and compels the trustee to subject the estate and the other creditors to the delay and expense of enforcing by legal proceedings the recovery of the preference, cannot prove up his claim and share in the estate, then I fail to see how a premium is offered to the so-called designing creditor, or a disadvantage is placed upon the consenting creditor. It is certainly not offering a premium to the designing creditor (that is, a creditor who has received a preference under conditions enabling the trustee to enforce a return thereof) to hold the rule that if the creditor does not surrender such preference, but contests the right thereto with the trustee, and is defeated, then he is debarred from proving his claim or sharing in the estate. This is the disability that is imposed upon the designing creditor in case he refuses to surrender his preference, and then, in settling the equities between him and the other creditors, it was deemed equitable to give him the benefit of the set-off, in case he had added to the value of the estate by selling the debtor goods on credit after the reception of the preference. It would, however,

109 F.—9

be offering a premium to the creditors receiving preferential payments to always refuse to surrender the same, if it be held that they may refuse to surrender the preference, contest the trustee's claim thereto, and, if defeated, then they can prove up their claim and share equally with the other creditors. With respect to the other class of creditors (that is, those who, having received a preference from an insolvent debtor, upon the estate being put into bankruptcy voluntarily surrender the preference received, and by doing so place themselves on an equality with the other creditors), upon what theory can it be said that they should be entitled to a preference over the other creditors, to the extent of allowing them the benefit of the set-off provided for in section 60? If, as between the preferred creditor of this class and the others, there is a superior equity in favor of the former, then it should be allowed him, but certainly it should not be so held unless such superior equity is shown to exist. It would seem, therefore, that the conclusion reached in McKey v. Lee, supra, must be based upon the theory that the creditor who has refused to surrender his preference, but from whom it has been recovered as the fruit of an action brought by the trustee, is entitled then to prove up his claim and share with the other creditors; and, if that is the law, then it must be conceded that unless the right of set-off is allowed to both classes of creditors a disadvantage would be imposed upon the more deserving class. If, however, the law is that the preferred creditor who refuses to surrender the preference, but from whom it is wrested at the cost, expense, and delay of a lawsuit, cannot then prove up his claim, then no disadvantage is placed on the creditor who surrenders the preference and is admitted to share in the estate; for in the former case the preferred creditor is debarred from receiving a dividend from the estate, and is compelled to account for the difference between the preferences received and the amount of the goods subsequently sold on credit, whereas in the latter case the creditor, upon surrendering the preference, becomes entitled to his full share of the estate. Holding the view herein expressed upon the question of the right of a creditor from whom a preference is recovered back by a suit at law to prove up his claim (that is, holding that he cannot prove his claim), I must dissent from the conclusion reached in McKey v. Lee, supra; and until advised by the court of appeals of this circuit, or the supreme court, that such conclusion is the law, I shall adhere to the rule stated in Re Christensen, supra, which ruling was followed by the referee in this case.

In the consideration given to the questions submitted, it has been assumed that at the time the payment to the claimant was made by the firm of Keller & Stake the firm was in fact insolvent, that being the finding made by the referee. As I understand the certificate of the referee, this conclusion was reached upon consideration of the facts appearing of record in the bankruptcy proceedings, and of the testimony given upon the examination of the bankrupt and other parties before the referee in connection with other proceedings had in the case; and upon part of the present claimant it is excepted that this evidence was introduced when the claimant was not present and was not represented. It is possible that I may not correctly interpret

the proceedings had before the referee, but it would appear that the referee, on the hearing upon the allowance of the debt due the present claimant, did give weight to the testimony introduced on other issues, taken when the claimant was not present and could not exercise the right of cross-examination. If this is the fact, the exception taken is well founded. When a person appears in a bankruptcy proceeding for the purpose of proving up a claim, he becomes a party thereto, in such sense that the record in many particulars is evidence against him. Thus, the fact of the adjudication, the existence of claims proved up, and the like, may be shown by the record thereof; but, if issue is taken by the trustee on the right to prove up the claim, then the testimony of witnesses taken before the referee upon other issues, to which the claimant was not in fact a party, and when he was not present and could not exercise the right of cross-examination, is not admissible. In such cases the witnesses, including the bankrupt, must be recalled, unless the claimant consents to the use of the testimony as it appears in the proceedings. It may be that, in view of the ruling upon the other questions involved, the claimant may not wish to be reheard upon the point of the actual insolvency of Keller & Stake when payment was received from them. The case will be returned to the referee, with instructions to notify the claimant that, if desired, a rehearing upon that question of fact will be had. If claimant does not wish a rehearing, then the ruling of the referee, as already made, will stand affirmed. If a rehearing is had, the judgment to be entered will depend upon the finding upon the question of the insolvency of the parties when the payment was made to claimant.