580 F.2d 705
 In re 2111 ASSOCIATES-CHICAGO, Alleged Bankrupt.
Edward G. GRANT and Hilton J. Herrman, Trustees of the
Estate of J. Robert Carlton, Appellants,
v.
BANK OF VIRGINIA and Edward S. Hirschler, Appellees.
 No. 77-1387.
 United States Court of Appeals,
Fourth Circuit.
 Argued March 6, 1978.
Decided July 27, 1978.
 
 Howard W. Dobbins, Richmond, Va. (Richard M. Price and George A. Warthen, II, Wallerstein, Goode & Dobbins, Richmond, Va., on brief), for appellants; Benjamin C. Ackerly, Richmond, Va. (J. Waverly Pulley, III, Robert M. Rolfe, Hunton & Williams, Richmond, Va., on brief), for appellee Bank of Virginia.
 John S. Graham, III, Richmond, Va. (George B. Little, R. Hunter Manson, Paul S. Bliley, Jr., Browder, Russell, Little, Morris & Butcher, Richmond, Va., on brief), for appellee Edward S. Hirschler.
 Before HAYNSWORTH, Chief Judge, RUSSELL, Circuit Judge, and HOFFMAN, Senior United States District Judge.*
 HOFFMAN, Senior District Judge:
 The trustees in a Chapter XII proceeding involving J. Robert Carlton[1] appeal from an order of the district court which reversed a prior order of the bankruptcy court. We think it clear that the district court was correct and we affirm.
 On April 29, 1976, Carlton filed his petition under Chapter XII of the Bankruptcy Act. On June 3, 1976, the Bank of Virginia (Bank) filed an involuntary petition in Bankruptcy against 2111 Associates-Chicago (hereinafter designated as 2111), a general partnership organized under the laws of the Commonwealth of Virginia on November 1, 1968 and then consisting of J. Robert Carlton and J. Kimpton Honey; the Bank alleging that 2111 was indebted to it in the sum of $363,654.32[2] and that 2111 had committed an act of bankruptcy in permitting Hirschler to obtain a lien upon its property through legal proceedings while insolvent and failing to vacate said lien within thirty days. To the involuntary petition, Carlton and the trustees answered and moved to dismiss, alleging in substance that 2111 was no longer an entity which could be adjudged a bankrupt by reason of the fact that the partners, other than Carlton, had withdrawn from the partnership, and that the assets of the partnership passed to Carlton as a sole proprietor thereby falling within the jurisdiction of the bankruptcy court under the Chapter XII proceeding.
 The bankruptcy court, on September 8, 1976, dismissed the Bank's involuntary petition and ruled that the assets of 2111 should be administered under the Chapter XII proceeding "as an asset thereof without privilege, preference, priority or lien to the general creditors of the former partnership." It is this order which was reversed by the district court and which, for reasons stated herein, we now affirm the action of the district court.
 The facts are not disputed. As stated, Carlton and Honey formed the general partnership on November 1, 1968. On March 9, 1972, pursuant to the recordation of an Amendment to the Certificate of General Partnership on January 24, 1973, Honey sold and transferred his interest in 2111 to John S. Lanahan and Hugh L. Womack. On September 14, 1973, an agreement between Lanahan, Carlton and others was executed and, effective at the latest by December 1, 1973, Lanahan withdrew as a partner.[3] This left Carlton and Womack as the general partners of 2111. On March 29, 1976 one month prior to the filing of the Chapter XII proceeding Womack executed a letter merely stating that he resigned as a partner effective immediately. Once again, there is no indication of any assignment or transfer of assets to Carlton.
 The bankruptcy court, relying primarily upon a Supreme Court case decided exactly 100 years ago, Case v. Beauregard, 99 U.S. 119, 25 L.Ed. 370 (1878), and In re Weber, Bk. Nos. 281, 282 (E.D.Va.1970) an unreported opinion by District Judge (now Chief Judge) Kellam held that where the property ceased to belong to the partnership, if by a Bona fide transfer it has become the property of one partner, the equities of the partners are extinguished and the derivative equities of the creditors are ended. Because neither Honey, Lanahan nor Womack claimed an interest in the assets of 2111, the bankruptcy court found that only Carlton had an interest in the assets[4] as the sole surviving partner. We believe that this ruling, under the undisputed facts, was clearly erroneous. While undoubtedly Honey, Lanahan and Womack had withdrawn from 2111 prior to the filing of the involuntary petition in bankruptcy, there clearly had been no "winding up" of the affairs of the partnership.[5] Carlton testified that the withdrawal of Lanahan and Womack did not disrupt the business and he continued to operate 2111 in the same manner as before their withdrawals, although there had been no effort to liquidate the assets of 2111 to satisfy its creditors. He also testified that the equipment leased or owned by 2111 was essential to the operation of the various warehouses owned or controlled by him and, without same, his operations would collapse.
 * We start with the premise that a partnership may be adjudged a bankrupt as a distinct legal entity. While one or more of the partners may be adjudged a bankrupt or debtor, this does not preclude the adjudication of the partnership. Section 5(a) of the Bankruptcy Act, 11 U.S.C. § 23(a) provides:
 A partnership, including a limited partnership containing one or more general partners, during the continuation of the partnership business or after its dissolution and before the final settlement thereof, may be adjudged a bankrupt either separately or jointly with one or more or all of its general partners.
 This was the law even prior to the passage of the Chandler Act in 1938. The distinctions between the Bankruptcy Acts of 1867 and 1898, as contrasted to the 1938 Act, do not affect this case. Thus, Meek v. Centre County Banking Co., 268 U.S 426, 45 S.Ct. 560, 69 L.Ed. 1028 (1925), and Liberty Nat. Bank of Roanoke v. Bear, 276 U.S. 215, 48 S.Ct. 252, 72 L.Ed. 536 (1928), remain the applicable law insofar as the concept of a distinct legal entity may be involved. See also: Roberts v. Kimbrough, 206 F.2d 257 (4th Cir. 1953); In re Jercyn Dress Shop, supra, n. 5; Remington on Bankruptcy, Vol. 1, § 79.
 II
 It is well settled that, since the Bankruptcy Act does not define the word "partnership", we must look to the general law of partnership and with specific reference to the law of the state where the alleged partnership is domiciled. Remington on Bankruptcy, Vol. 1, § 85. In this case the law of the Commonwealth of Virginia controls and, since the Uniform Partnership Act was adopted in Virginia in 1918, we are especially interested in §§ 50-1 through 50-43 of the Code of Virginia, 1950 as amended, relating to general partnerships. Sections 50-29 and 50-30 are emphasized as pertinent to this case.[6] Thus, in the instant case, we have a dissolved partnership which legally and factually continues to exist as there has been no "winding up" of partnership affairs. Since it is conceded that there has been no effort toward "winding up" or "final settlement" of the partnership business, and that it is in fact continuing, we reject the conclusion of the bankruptcy court that the partnership ceased to exist when Womack submitted his resignation and that a sole proprietorship existed at the time Carlton filed his Chapter XII petition. 11 U.S.C. § 23(a).
 III
 The bankruptcy court's misplaced reliance upon Case v. Beauregard, supra, is apparent. Taken out of context there are certain passages from that case which are arguably in favor of the trustees but, on its facts and in law, Case is inapposite.
 We have previously noted that Case is now 100 years old. It is significant that Case was not a bankruptcy proceeding (the events took place in 1866 when only the Bankruptcy Act of 1841 was in effect), but was an equitable action by a Bona fide assignee and transferee of one of the original partners. It was conceded in Case that the partnership interest was assigned and transferred for a valid consideration and the three original partners had completely divested themselves of all interest in the partnership at the time the action was commenced. In fact, the partnership was a lessee of a railroad company and at a later date the railroad company, pursuant to a fusion agreement, took possession of all assets and franchises which it had previously leased to the partnership. The object of the suit was to follow and subject to the payment of a partnership debt certain property which formerly belonged to the partnership, but which, before the complaint was filed, had been transferred to the defendants for a valid consideration. On this state of facts, Mr. Justice Strong said:
 
 
 1
 So, if before the interposition of the court is asked the property has ceased to belong to the partnership, if by a Bona fide transfer it has become the several property either of one partner or a third person, the equities of the partners are extinguished, and consequently the derivative equities of the creditors are at an end. It is, therefore, always essential to any preferential right of the creditors that there shall be property owned by the partnership when the claim for preference is sought to be enforced.
 
 
 2
 We are confused as to how and why the bankruptcy court applied Case v. Beauregard under the facts as hereto stated. There is clearly no suggestion that Womack even transferred his interest to Carlton, much less for a valuable consideration. The same is true as to Lanahan. As stated in In re Jercyn Dress Shop, supra, n. 5, "(a)ny conversion of partnership property into property of an individual partner, for example, must have been Bona fide, and without intent to hinder, delay, or defraud creditors."
 
 
 3
 We do not say that Case v. Beauregard is without some vitality. But, in the interim period since that opinion was rendered, there have been many changes in the Bankruptcy Act, as well as the adoption by Virginia of the Uniform Partnership Act, and to hold with the bankruptcy court in accepting out of context certain language in a case now 100 years old would, in effect, undercut the present Bankruptcy Act in its entirety. We conclude that Case v. Beauregard has no application to the present proceedings.
 
 
 4
 With equal reliance the bankruptcy court refers to In re Weber. This was a Chapter XI proceeding filed by a husband and wife as general partners the only partners comprising the partnership. Under § 5(i) of the Bankruptcy Act, 11 U.S.C. § 23(i), it is provided that where all general partners are adjudged bankrupt, the partnership shall also be adjudged bankrupt. The trustees, correctly we think, do not rely upon Weber. It stands to reason that where the court has jurisdiction over all general partners, it necessarily has control of the partnership assets.
 
 
 5
 While not of significance in this case, the time element between dissolution and termination is not of great importance according to Virginia law. In Hodge v. Kennedy, 198 Va. 416, 94 S.E.2d 274 (1946), the partnership existed prior to 1929 at which time the partners cut timber, bought land, and processed lumber under the partnership firm name. During the course of the partnership business a firm debt to the bank in the approximate sum of $10,000.00 was contracted. In 1929, one of the partners paid one-half of the bank debt. Another partner assumed the payment of the remaining half of the indebtedness, all active partnership business then ended, and this partner was left in charge. In 1953, after the real estate owned by the partnership had increased in value and after two of the three partners had died (the third partner contributed nothing toward the bank debt), an action was brought by and against the representatives, heirs and distributees of the estates of the deceased partners to effect a winding up of the partnership affairs. The Supreme Court of Virginia, while holding that the partnership was dissolved by the death of the first partner, said: "Yet the dissolution did not terminate the partnership, for under § 50-30, Code 1950, that continued until the winding up of its affairs was completed."
 
 
 6
 And in Millhiser v. McKinley, 98 Va. 207, 35 S.E. 446 (1900) long prior to the passage of the Uniform Partnership Act the contention was that one partner could not transfer his interest in the partnership to another partner, so as to enable the latter to make a valid assignment of the firm property to secure his individual creditors, to the prejudice of the firm's creditors. In rejecting this argument the Supreme Court of Virginia held that the solvency of such partnership at the time of a Bona fide transfer for a valid consideration was effected is the controlling factor, but warned that if the partnership firm was insolvent, or on the eve of insolvency, a purchase by one partner of the interest of the other partner, in consideration of the assumption by the former of the debts of the firm, is upon a consideration which is of no value and is the equivalent of hindering, delaying or defrauding the creditors of the partnership. To hold otherwise, the court said, is to authorize the retiring partner to give property away which in common justice ought to be applied to the payment of partnership debts.
 
 IV
 
 7
 We do not, of course, hold that 2111 must be adjudicated a bankrupt. The issue of insolvency is not before the court. We merely hold that the district court was plainly right in reversing the order of the bankruptcy court which granted the motion to dismiss the involuntary petition in bankruptcy and ordered that the priority claims to partnership assets be relinquished.
 
 
 8
 AFFIRMED.
 
 
 
 *
 Of the United States District Court for the Eastern District of Virginia sitting by designation
 
 
 [1]
 In re J. Robert Carlton, Bk. No. 76-586-R, now pending in the United States District Court for the Eastern District of Virginia, Richmond Division
 
 
 [2]
 Hirschler, also an appellee, alleges that he is a creditor of 2111 to the extent of $275,000.00. Hirschler was denied the right to intervene in the bankruptcy proceeding but was granted leave to participate in this appeal. Hirschler concedes that his rights will be adequately protected if the district court is affirmed. No further reference will be made to Hirschler
 
 
 [3]
 The withdrawal by Lanahan did not Per se constitute an assignment or transfer of Lanahan's interest in the partnership to Carlton. We do not have before us the potential liability of Lanahan for existing debts at the time of his withdrawal. The agreement between the parties provided for mutual releases and a further save-harmless agreement by Carlton and wife to indemnify Lanahan for any loss he might sustain occasioned by the failure of 2111 to pay the indebtedness to the Bank when due
 
 
 [4]
 The partnership known as 2111 was engaged in leasing certain material- handling equipment and other equipment used in connection with warehouses owned and operated by Carlton or entities which he controlled located in Kentucky, Utah, New York, Georgia, Indiana, Virginia and elsewhere. Some of these assets are still being used by the trustees in the Chapter XII proceeding
 
 
 [5]
 With respect to Honey it is noted that he filed an answer to the creditor's petition. It is indicated that Honey "sold" his interest in the partnership to Lanahan and Womack. In any event the partnership may be adjudicated without adjudicating the individual partners. Bankruptcy Rule 108(c) requires each unadjudicated general partner to file a statement of his personal assets and liabilities within ten days of the qualification of the trustee of the partnership if the partnership is adjudicated. In re Jercyn Dress Shop, 516 F.2d 864 (2 Cir. 1975)
 
 
 [6]
 Section 50-29 reads: "Dissolution defined. The dissolution of a partnership is the change in the relation of the partners caused by any partner ceasing to be associated in the carrying on as distinguished from the winding up of the business."
 Section 50-30 provides: "Partnership not terminated by dissolution. On dissolution the partnership is not terminated, but continues until the winding up of partnership affairs is completed."