## In re KELLAR.

(District Court, N. D. Iowa, Cedar Rapids Division. August 17, 1901.)

1. BANKRUPTCY—PREFERENCES—INTEREST PAID IN ADVANCE ON RENEWAL OF NOTES.

Payments of interest in advance, made by an insolvent within four months before his bankruptcy to a bank to secure a renewal of notes held by the bank, do not constitute preferences, within Bankr. Act 1898, § 57g, which the bank must surrender before proving its claim.

2. SAME—DEPOSITS APPLIED BY BANK IN PAYMENT OF OVERDRAFT.

Deposits made by an insolvent in a bank within four months prior to his bankruptcy, and applied by the bank to the payment of an overdraft previously made, constitute a preference, within the meaning of

Bankr. Act 1898, § 57g, which must be surrendered by the bank before it can prove a claim against the bankrupt's estate, notwithstanding such deposits and their application were in the usual course of business, and without knowledge on the part of the bank of the insolvency of the depositor.

In Bankruptcy. On review of ruling of referee respecting claim of Hamilton County State Bank.

D. C. Chase, for creditors.

J. L. Kamrar, for bank.

SHIRAS, District Judge. In due season after the adjudication in bankruptcy was entered in this case, the Hamilton County State Bank proved up its claim against the estate in the sum of $8,386.26, it being stated in the proof filed that the indebtedness was for money loaned, the same being evidenced by promissory notes executed by the bankrupt. Some time after the allowance of this claim, the trustee filed an application to have the allowance set aside, and for an order refusing the approval of the claim, unless the bank should repay certain payments received by it after the insolvency of the bankrupt. Upon the hearing before the referee it appeared that the bankrupt had, from time to time, obtained extensions or renewals of his indebtedness to the bank, and, in accordance with the usual custom, had paid in advance the interest charged by the bank for such renewals. It further appeared in evidence that the bankrupt, during the continuance of the business transacted by him, had kept an open account with the Hamilton County State Bank, and that, after his insolvency had intervened, he had, from time to time, overdrawn his account up to the sum of $600, so that, in addition to the amounts due the bank upon the promissory notes held by it, he had become indebted in the sum named for moneys advanced him. It further appeared that by deposits subsequently made this indebtedness for overdrafts had been fully paid, and when the petition in bankruptcy was filed there was a sum to the credit of the bankrupt upon the running account, which was paid to the trustee. The several payments or deposits upon the open account were all made after the actual insolvency of the bankrupt. Upon this state of facts the referee ruled that the payment of the interest charged for the several renewals of the notes was not a preferential payment within the meaning of the bankrupt act, and that the bank had the legal right to apply the deposits made from time to time in liquidation of the indebtedness created by the overdrafts, and that such application did not constitute a preferential payment, and therefore the referee refused to set aside the allowance of the claim of the bank as prayed for, and, this ruling having been excepted to, the questions presented thereby have been certified to this court for consideration.

The ruling of the referee to the effect that the payments of interest made to the bank upon the several renewals of the indebtedness due it cannot be deemed to be preferences within the meaning of clause "g" of section 57 of the bankrupt act is clearly correct, and is therefore affirmed. These payments of interest were not made upon the preexisting debts or claims, nor for the purpose of reducing the amount

of the sums then due the bank.  They were made for the purpose of procuring an extension of time of the maturity of the loans, in order to secure the right to the use of the money for the stipulated period. This was a present consideration, given by the bank to Kellar, for which he then paid the bank the sums received by it.  The interest money was not paid on a debt then due, but solely to secure the right to the use of the money for a further stipulated period, and in no just sense can it be said that the receipt of the money by the bank as a consideration for the extension or renewal of the loans was a preferential payment upon the loans themselves.

The remaining question presented by the exceptions to the ruling of the referee is not so easy of solution.  There is certainly much to be said in favor of the view taken by the referee to the effect that the bank had the right to apply in payment of the debt to it created by the overdrafts the deposits subsequently made, without being held liable to the charge of receiving a preference on its claim, and if the evidence justified the finding that the overdrafts were permitted or contracted for on the faith of special sums to be thereafter deposited it might be held that the right to the deposit was created when the overdraft was made; but it is not shown that such was the fact.  It is undoubtedly true that the bank expected that Kellar would, from time to time, make deposits which could be applied in payment of the sums due on account; but the same promise of payment was made to every creditor who sold goods to the bankrupt, and it cannot be held that because the debtor, when he created the debt, either by buying goods or borrowing the money, promised to pay in the future, therefore such a right was created in favor of the creditor that he might receive the payment after the insolvency of the debtor without it being deemed a preference under the provisions of section 57 of the act.  Some stress is laid in the argument upon the fact that the deposits were made and applied in the usual course of business, without knowledge on part of the bank of the actual insolvency of the debtor. In the opinion filed by this court when this case was before it on exceptions respecting the claims of the Warfield-Pratt-Howell Company this question was considered at length, and the conclusion was reached that the fact of the preference being received did not depend on the knowledge, or lack of it, of either the creditor or the bankrupt, nor upon the fact that the transaction was in the ordinary course of business.  In re Kellar (D. C.) 109 Fed. 118–123.  The opinion by this court was filed on the 27th day of May, 1901, and on the same day the supreme court handed down its decision in Pirie v. Trust Co., 21 Sup. Ct. 906, 45 L. Ed. 1171, in which it is expressly ruled that a creditor who has received payment of money from an insolvent debtor, without knowing or having cause to believe that the debtor was insolvent, or that a preference was intended, could not, under the provisions of clause "g" of section 57 of the act, prove up his claim, unless he surrendered to the trustee the payment received; and this decision settles the question that an actual preference cannot be retained by a creditor seeking to prove the balance of his claim, upon the theory that the payments were received in the ordinary course of business, and without knowledge of the insolvent condition of the

debtor. The conclusion of the referee that the payment of the over-drafts in the manner stated did not constitute the giving of a preference seems to be based upon the legal proposition "that the bank had the legal right to apply the deposits to liquidate the indebtedness created by the overdrafts," and in the brief of counsel are cited authorities in support of the proposition that the bank had a lien on the moneys deposited in such sense that it had the right to apply the same in payment of any debt due it. Under the rules of the common law this right doubtless existed, but the question is, what change has been made therein by the enactment of the bankrupt act? It will be kept in mind that the indebtedness by way of overdrafts and the depositing of the several sums applied in payment thereof all occurred after the date of the insolvency of Kellar. If the latter, after his insolvency, had gone to the bank with $600 in money, and had in terms paid the same in discharge of the debt due upon the overdrafts, can there be any question that such a payment would have constituted a preference? The sums due upon the overdrafts were debts due from the bankrupt, and the payment thereof after the actual insolvency of the debtor certainly gives the bank a preference over the other creditors, without regard to the particular method by which the payment was brought about. In subdivision "a" of section 60 of the act a preference is defined as follows:

"A person shall be deemed to have given a preference, if, being insolvent, he had procured or suffered a judgment to be entered against himself in favor of any person, or made a transfer of any of his property, and the effect of the enforcement of such judgment or transfer will be to enable any one of his creditors to obtain a greater percentage of his debt than any other of such creditors of the same class."

In the already cited case of Pirie v. Trust Co. the supreme court holds that the word "property" in this section includes money, and that a "transfer is defined to be not only the sale of property, but every other and different mode of disposing of or parting with property. All technicality and narrowness of meaning is precluded. The word is used in its most comprehensive sense, and is intended to include every means and manner by which property can pass from the ownership and possession of another, and by which the result forbidden by the statute may be accomplished,—'a preference enabling a creditor to obtain a greater percentage of his debt than any other creditors of the same class.'" The facts in the case now before the court show that the bank is a creditor of the bankrupt, and as such is seeking a dividend from the estate; that, after the insolvency of the bankrupt, the latter paid into the bank sums of money aggregating $600; that these sums were applied by the bank to the payment in full of so much of the indebtedness due the bank as was evidenced by the overdrafts; and it is certainly clear that, if the bank is allowed to prove up its claim, and receive a dividend thereon, without repaying to the trustee the sums received after the insolvency of the bankrupt, the bank will secure a greater percentage of its debt than will the other creditors; and it is this result which the supreme court holds is absolutely forbidden by the provisions of the bankrupt act, regardless of the means or manner by which the preferences have

been brought about. Under this ruling of the supreme court, I can see no escape from the conclusion that the payments by way of deposits received by the bank after the date of the insolvency of Kellar, and applied in discharge of so much of the debt due the bank as was created by the overdrafts, must be held to be preferential payments of such a nature that the bank cannot be allowed to share in the estate, unless it repays to the trustee the payments thus made it. The ruling of the referee must, therefore, be reversed, with instructions to enter an order to the effect that, unless the bank accounts to the trustee, within some reasonable time, to be fixed in the order, for the payments applied in discharge of the overdrafts and received by the bank since the date of the insolvency of Almon D. Kellar, then the allowance of the claim of the bank shall be set aside as prayed for; and it is further ordered that the taxable costs of this proceeding are adjudged against the bank.